Please Conform
And Return

1  **BISNAR | CHASE**

2  ONE NEWPORT PLACE
   1301 DOVE ST., SUITE 120

3  NEWPORT BEACH, CA 92660
   PHONE: (949) 752-2999
   FACSIMILE: (949) 752-2777

4  JOHN P. BISNAR, State Bar No. 80894
   BRIAN D. CHASE, State Bar No.164109

5  Attorneys for Plaintiff JOSHUA HILD

6

7

ORIGINAL
FILED

OCT - 4 2007

RICHARD W. ......
CLERK U.S. DI...
NORTHERN DISTR.... OF CALIFORNIA

8              **UNITED STATES DISTRICT COURT**

9          **NORTHERN DISTRICT OF CALIFORNIA**          **JCS**

10

11  JOSHUA HILD,                    )      **CASE NO. 07 5107**
                                    )
12                  Plaintiff,      )      **COMPLAINT FOR DECLARATORY**
                                    )      **JUDGMENT FOR VIOLATION OF**
13          vs.                     )      **FEDERAL CONSTITUTIONAL**
                                    )      **RIGHTS AND FOR INJUNCTIVE**
14  CALIFORNIA SUPREME COURT;       )      **RELIEF.**
    CALIFORNIA COURT OF APPEAL,     )
15  SECOND APPELLATE DISTRICT,      )
                                    )
16                  Defendants.     )
                                    )
17  _____)

18      **COMES NOW,** Plaintiff JOSHUA HILD, and hereby complains of the Defendants and

19  each of them as follows.

20                          **PARTIES**

21      1.      At all times relevant herein, Plaintiff JOSHUA HILD, was and is a citizen and

22  resident of the County of Fresno, State of California.

23      2.      At all times herein mentioned, Defendant CALIFORNIA SUPREME COURT

24  was and is the superior appellate judicial branch of the government of the State of California

25  duly created and existing pursuant to Article VI of the California Constitution.

26      3.      At all times herein mentioned, Defendant CALIFORNIA COURT OF APPEAL,

27  SECOND APPELLATE DISTRICT, was and is an intermediate appellate judicial branch of

28  the government of the State of California duly created and existing pursuant to Article VI of

BISNAR | CHASE

1

the California Constitution.

## JURISDICTION AND VENUE

4.     Jurisdiction of this Court over the subject matter of this action is predicated on 28 U.S.C. § 1331, in that the Plaintiff's claims herein of denial of due process and equal protection arise under the 14th Amendment of the U.S. Constitution.

5.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(b), in that Defendant CALIFORNIA SUPREME COURT has its principal place of official business in the City and County of San Francisco, State of California.

## GENERAL ALLEGATIONS

6.     On March 22, 2003, Plaintiff and a minor child at the time, Joshua Hild, (a resident of the small company town of Big Creek located 90 miles northeast of Fresno, California), was seriously injured by Katherine Magdaleno, while she was on duty as an employee of the Southern California Edison Company ("SCE"), when a paint ball gun being held by Ms. Magdaleno accidentally discharged, permanently blinding Plaintiff in his right eye.

7.     On April 28, 2003, acting by and through his guardian ad litem, Plaintiff filed a civil action for personal injuries against SCE in the Los Angeles Superior Court, Case No. BC294734 ("Underlying Civil Action").

8.     During pretrial discovery in the Underlying Civil Action, it was discovered that immediately following the accident, Ms. Magdaleno's immediate supervisor at SCE, Andrew McMillan, had admittedly spoliated,  contrary to SCE document retention policies, a handwritten statement contemporaneously prepared by Ms. Magdaleno at Mr. McMillan's direction, reciting the facts of the accident. Ms. McMillan replaced the handwritten statement with a self serving typewritten account which admittedly embellished the incident by adding legal terms of art intended to defend against prospective SCE tort liability, euphemizing the accident as "horseplay," words Mr. McMillan admitted never appeared in the original account, the contents of which will never truly be known.

9.     SCE thereafter further willfully concealed and suppressed in sworn discovery

**PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF**

1  responses the fact of the one-time existence and subsequent destruction of that original, fresh,

2  contemporaneously-prepared handwritten evidence, leading to a motion by Plaintiff for issue,

3  evidence and terminating sanctions, based on upon that spoliation, brought pursuant to the

4  California doctrine of *Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1.

5  The motion was granted by the trial court in part, and the trial court ultimately approved the

6  giving of CACI 204 (willful suppression of evidence) at the trial of the action.

7      10.    The case was tried to a Los Angeles County Superior Court jury on April 22,

8  2005, solely on the issues of whether Ms. Magdaleno had been acting within the scope of her

9  employment at the time of the accident, and on Plaintiff's damages (as SCE stipulated that

10  Magdaleno had been negligent and had been within the course of her employment at the time

11  of the accident).

12      11.    Based upon the substantial evidence presented at trial, the jury found as an issue

13  of fact, that Ms. Magdaleno had been acting within the scope of her employment, rendering

14  SCE liable for her conduct and Plaintiff's damages in the sum of $704,633. Judgement for

15  Plaintiff in said sum was subsequently entered for Plaintiff and against SCE on May 24, 2005.

16      12.    On August 23, 2005, SCE appealed the judgment to Defendant CALIFORNIA

17  COURT OF APPEAL, SECOND APPELLATE DISTRICT, seeking to overturn the jury's

18  verdict (and judgment based thereon) finding, as a question of fact, that Ms. Magdaleno had

19  been acting within the scope of her employment at the time of the accident.

20      13.    During oral argument before on May 21, 2007 before the three-judge panel of

21  Defendant CALIFORNIA COURT OF APPEAL, SECOND APPELLATE DISTRICT, after

22  extensive briefing, the panel posed no questions to Plaintiff's counsel.

23      14.    On June 25, 2007, the Defendant CALIFORNIA COURT OF APPEAL,

24  SECOND APPELLATE DISTRICT issued an unpublished opinion, rejecting the jury's (and

25  the trial court's) evaluation of the evidence and the jury's determination of the issues of fact,

26  the Court held that, *as a matter of law*, SCE could not be liable for the damages resulting from

27  the injury Plaintiff suffered as a result of that accident. (A copy of that unpublished Opinion

28  is attached hereto as Exhibit "1.") The Court of Appeal subsequently modified its Opinion on

BISNAR | CHASE

**PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF**

July 24, 2007 at SCE's request specifically to enable SCE to recover its costs below again Plaintiff, which are expected to exceed tens of thousands of dollars.

## FIRST COUNT - DECLARATORY JUDGMENT - 28 U.S.C. § 2201

(Against Defendant CALIFORNIA COURT OF APPEAL, SECOND APPELLATE DISTRICT)

15.    Plaintiff realleges and incorporates by reference each of the allegations of paragraphs 1 through 14, inclusive, above, as though fully set forth herein.

16.    In summarily issuing its June 24, 2007 opinion as "unpublished," Defendant CALIFORNIA COURT OF APPEAL, SECOND APPELLATE DISTRICT, engaged in prohibited "selective prospectivity," as enunciated by the U.S. Supreme Court's decision in *James S. Beam Distilling Co. v. Georgia* 501 U.S. 529, 111 S.Ct. 2439, 115 L.Ed.2d 481 (1991) violating Plaintiff's 14th Amendment rights to due process and equal protection, in the following particulars:

A.    On April 1, 2007, well prior to issuance of the aforementioned June 25, 2007 opinion, Defendant SUPREME COURT OF CALIFORNIA adopted amended  California Rules of Court ("C.R.C.") Rule 8.1105(c) governing the standards for certification of published opinions, adopting a November, 2006 Report and Recommendations of Defendant SUPREME COURT OF CALIFORNIA's Advisory Committee on Rules for Publication of Court of Appeal Opinions. (A copy of that Report is attached hereto as Exhibit "2.") Pursuant to amended Rule  8.1105(c), Defendant CALIFORNIA COURT OF APPEAL, SECOND APPELLATE DISTRICT, was obligated after April 1, 2007, to publish opinions under both the former criteria of Rule 8.1105(c), as well as based on and additional new criteria set forth in said Rule, ***including "(4)  Advances a new interpretation, clarification, criticism, or construction of a provision of a constitution, statute, ordinance, or court rule."*** Moreover, the Court of Appeal was precluded from considering workload, potential embarrassment of litigants, counsel or judges in deciding whether to certify for publication.  Rule 8.1105(d).

B.    As a result of these new criteria,     Defendant CALIFORNIA  COURT  OF APPEAL, SECOND APPELLATE DISTRICT, was obligated to have published the June 25,

2007 opinion under Rule 8.1105(c), because that Opinion clearly deviated dramatically from the controlling and longstanding, well-settled law and *stare decisis* of the State of California in the following numerous and dramatic particulars:

      1.    Defendant CALIFORNIA COURT OF APPEAL, SECOND APPELLATE DISTRICT admittedly violated the very standard of review it cited as the proper standard enunciated in *Perez v. Van Groningen, etc.* (1986) 41 Cal.3d 962, admitting factual issues existed precluding adjudication of scope of employment as a question of law --- yet then did impermissibly so anyway, contrary to *Perez, supra*;

      2.    Defendant CALIFORNIA COURT OF APPEAL, SECOND APPELLATE DISTRICT repudiated the jury's actual fact-finding in Mr. Hild's favor, disregarded substantial evidence the jury relied upon supporting the verdict, and instead selectively chose and reweighed the evidence in SCE's favor in order to reverse the judgment for Mr. Hild, contrary to law prohibiting California Courts of Appeal from "substitut[ing] [their] own inferences or deductions" for those of the jury. *People v. Barnes* (1986) 42 Cal.3d 284, 303; *People v. Thornton* (1974) 11 Cal.3d 738, 754; *In re Estate of Beard* (1999) 71 Cal.App.4th 753, 779.

      3.    Defendant CALIFORNIA COURT OF APPEAL, SECOND APPELLATE DISTRICT totally repudiated Defendant CALIFORNIA SUPREME COURT's seminal ruling in *Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 12, authorizing trial courts to adapt and impose jury instructions on willful suppression of evidence to remedy parties' acts of spoliation of important evidence prejudicial to their opponents (as merely one alternative to recognizing an independent tort cause of action for intentional spoliation of evidence).

      4.    Defendant CALIFORNIA COURT OF APPEAL, SECOND APPELLATE DISTRICT disregarded inferences the jury obviously properly drew against SCE under CACI 204 following SCE's spoliation of the very first handwritten and most critical handwritten account of the incident personally drafted by Ms. Magdaleno, SCE's coverup of that fact in false discovery responses, and the repeated

impeachment of Mr. McMillan at trial on the issue. In superimposing its personal belief in SCE's witnesses' credibility over these conflicting adverse inferences arising from the spoliation, Defendant CALIFORNIA COURT OF APPEAL, SECOND APPELLATE DISTRICT repudiated the primary remedy Defendant CALIFORNIA SUPREME COURT expressly intended be available to Plaintiff in lieu of a cause of action for intentional spoliation of evidence in *Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1.

5. By totally disregarding all conflicting factual evidence and inferences adverse to SCE subscribed to by the jury, and instead reversing the jury's determination based on its own selection of other evidence favorable to SCE, Defendant CALIFORNIA COURT OF APPEAL, SECOND APPELLATE DISTRICT usurped the jury's function and nullified altogether the jury's factfinding on these disputed factual questions, violating Plaintiff's constitutionally-guaranteed right to a jury trial on these factual issues. Cal.Const. Art. I, § 16; U.S. Const. 7th Am.; C.C.P. § 592; Evid.C. § 312; *Cavinin v. Pac. Southwest Airlines* (1983) 148 Cal.App.3d 512, 531; *Olivia N. v. NBC* (1977) 74 Cal.App.3d 383, 389.

6. Defendant CALIFORNIA COURT OF APPEAL, SECOND APPELLATE DISTRICT'S "unpublished" opinion also dramatically broke new ground holding that, regardless of the admittedly conflicting evidence, the factually disputed admittedly unintentional accident was indistinguishable as a matter of law from rape/sexual battery-intentional tort cases in that no amount of disputed facts will ever bring the case within an employer's scope of employment, *citing Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 219.

7. Defendant CALIFORNIA COURT OF APPEAL, SECOND APPELLATE DISTRICT asserted that the scores of well-settled cases cited by Plaintiff holding the issue of scope of employment to be a question of fact in a myriad of factually comparable employer-employee accident cases, quipping "[a]ll of the cases are distinguishable." However, Defendant CALIFORNIA COURT OF APPEAL,

SECOND APPELLATE DISTRICT thereafter only addressed a single case cited by Plaintiff, and conspicuously offered no explanation whatsoever as to how or why the scores of other cases cited by Plaintiff which plainly conflicted with its decision, were or are "distinguishable."

8.    In never stating, nor apprising Plaintiff of, the revolutionary and controversial new legal grounds replied upon by Defendant CALIFORNIA COURT OF APPEAL, SECOND APPELLATE DISTRICT, for its unpublished June 25, 2007 Opinion until issuing that Opinion for the very first time, Defendant CALIFORNIA COURT OF APPEAL, SECOND APPELLATE DISTRICT further denied Plaintiff any opportunity to address in writing and/or orally, the new and revolutionary grounds it intended to apply, and did so apply in issuing said opinion, and thus denied Plaintiff his due process rights.

C.    In purposefully electing to issue the June 25, 2007 opinion as "unpublished," Defendant CALIFORNIA COURT OF APPEAL, SECOND APPELLATE DISTRICT further ensured denial to Plaintiff any right to judicial review by the Defendant CALIFORNIA SUPREME COURT of its June 25, 2007 opinion, as a result of the following:

1.    Under C.R.C. Rule 8.1115, the "unpublished" opinion may not be cited or relied upon for any purpose by any other California appellate or trial court in any other case. Consequently, by deeming the June 25, 2007 Opinion "unpublished," the decision simply does not exist for the purposes of *stare decisis,* cannot "create" new law, does not present an important question of law, and axiomatically does not and cannot conflict with the law enunciated by any other published opinion issued by any other California Court of Appeal or Supreme Court, again because the opinion may not be cited or published for any reason;

2.    Under C.R.C. Rule 8.500(b), review of that unpublished opinion by Defendant CALIFORNIA SUPREME COURT is authorized (other than when based on procedural deficiencies) only when necessary to secure uniformity of decision or to settle an important question of law;

3.      Plaintiff is informed and believes, based in part upon the November, 2006 Report and Recommendations of Defendant SUPREME COURT OF CALIFORNIA's Advisory Committee on Rules for Publication of Court of Appeal Opinions, and in part because C.R.C. Rule 8.1115 axiomatically forecloses an "unpublished" opinion from meeting the *de minimus* review criteria of Rule 8.500(b), that during the last 10 years, Defendant CALIFORNIA SUPREME COURT has routinely applied Rule 8.500(b) in such a manner as routinely to decline review of any unpublished decisions issued in civil cases, except in those extremely rare cases where Defendant CALIFORNIA SUPREME COURT has already previously granted review from a published decision presenting the same legal issues presented in the unpublished decision as to which review was later sought, and thus has implemented a *de facto* policy of refusing review of unpublished decisions in civil cases inclusive of the subject June 25, 2007 Opinion.

4.      As a result of the foregoing, and in particular the interplay of C.R.C. Rules 8.1115 (preventing any citation or reliance whatsoever on unpublished decisions), coupled with Rule 8.500(b)'s review criteria (which review qualification are axiomatically extinguished by the application of Rule 8.1115 once an opinion is deemed "unpublished"), by electing to issue the June 25, 2007 Opinion as "unpublished," Defendant CALIFORNIA COURT OF APPEAL, SECOND APPELLATE DISTRICT deprived Plaintiff of his 14th Amendment right to any due process and/or judicial review of said Opinion.

D.   In engaging in the foregoing actions with respect to Plaintiff herein, including deliberately deeming the June 25, 2007 Opinion "unpublished" (contrary to the directive of C.r.C. Rule 8.1105(c)), knowing the operation of C.R.C. Rules 8.1115 and 8.500(b) would preclude and deprive Plaintiff of any judicial review whatsoever of its Opinion, Defendant CALIFORNIA COURT OF APPEAL, SECOND APPELLATE DISTRICT, expressly overrode well-settled California judicial stare decisis in numerous particulars, and created a system of "selective prospectivity" by adopting dramatically new rules of law (which profoundly conflicted with established constitutional, statutory and common law of California)

**PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF**

1  which it purposefully applied only to Plaintiff's case for a single one-time, result-oriented

2  purpose, returning to standing California precedent for every other case arising on the same

3  facts predating the pronouncement of the unpublished June 25, 2007 Opinion, thus denying

4  Plaintiff his federal constitutional rights guaranteed under the 14th Amendment to due process

5  and further denying Plaintiff equal protection of the law by applying such new rules of law

6  arbitrarily, differently, and exclusively to Plaintiff, than were or are applied to all other

7  similarly-situated litigants.

8        E.    Plaintiff further is informed and believes and thereon alleges that despite

9  awareness of its publication obligation under C.R.C. Rule 8.1105(c) amended effective April

10  1, 2007, Defendant CALIFORNIA COURT OF APPEAL, SECOND APPELLATE

11  DISTRICT nonetheless purposefully disregarded that Rule, and deliberately employed the

12  "unpublished" mantra of the June 25, 2007 opinion solely to enable it to engage in "selective

13  prospectivity" and to reach an unassailable, unreviewable, result-oriented decision and

14  outcome in Plaintiff's case, which could neither be reversed nor even reviewed under the

15  criteria of C.R.C. Rule 8.500(b), nor ever subjected to judicial or public scrutiny and/or

16  criticism in the future, as a result of the operation of C.R.C. Rule 8.1115, and thus its violation

17  of Plaintiff's aforementioned constitutional rights was intentional.

18        F.    Had Defendant CALIFORNIA COURT OF APPEAL, SECOND APPELLATE

19  DISTRICT, known it was obligated to publish said Opinion and such Opinion had been legally

20  citable and usable, and thus: (1) further subject to scrutiny and harsh criticism by other justices

21  and courts a result-oriented one-time novel and irregular application of law; and (2) further

22  subject to potentially embarrassing review, criticism, and reversal by Defendant

23  CALIFORNIA SUPREME COURT, said Defendant would have either issued an opinion

24  consistent with and in conformity with the settled-rules of law and *stare decisis,* mandating

25  upholding Plaintiff's jury verdict and judgment against SCE properly respecting to jury's role

26  as the sole finder of disputed fact, or the fact of citability to such opinion, even if ordered

27  unpublished , would have granted Plaintiff a right to judicial review by Defendant

28  CALIFORNIA SUPREME COURT, as such a citable opinion would have amply met the

9

**PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF**

criteria of C.R.C. Rule 8.500(b)(1), because it clearly deviated profoundly in so many numerous ways from existing law, and created a dramatic conflict among the districts, as a result of which Plaintiff would not have been deprived of his right to judicial review.

17.     There is presently a dispute and controversy as between the parties wherein Plaintiff contends that the June 25, 2007 unpublished Opinion is null and void as it is the unconstitutional product of an unconstitutional system of "selective prospectivity," whereas Defendant asserts that the Opinion was not unconstitutional and/or unconstitutionally derived, and accordingly, a declaration from this Court as to the constitutionality of that June 25, 2007 Opinion is necessary and proper so as to ascertain the rights and obligations of the parties.

18.     Pursuant to 28 U.S.C. § 2201, Plaintiff seeks a declaratory judgment that the unpublished June 25, 2007 Opinion of Defendant CALIFORNIA COURT OF APPEAL, SECOND APPELLATE DISTRICT, was and is the product of an unconstitutional system of "selective prospectivity," and deprived Plaintiff of his 14th Amendment rights to due process and equal protection,  and is therefore null and void, and that, pursuant to 28 U.S.C. § 2202, that the cause ordered remanded to a new and different panel of Defendant CALIFORNIA COURT OF APPEAL, SECOND APPELLATE DISTRICT, for consideration *de novo* based upon the findings and judgment of this Court.

## SECOND COUNT - DECLARATORY JUDGMENT - 28 U.S.C. § 2201

(Against Defendant CALIFORNIA SUPREME COURT)

19.     Plaintiff realleges and incorporates by reference each of the allegations of paragraphs 15 through 17, inclusive, of the First Count, as though fully set forth herein.

20.     Pursuant to California Constitution, Art. VI, Defendant CALIFORNIA SUPREME COURT is charged with authority over establishing publication criteria of the appellate courts of the state, and supervisory power over its lower courts, including Defendant CALIFORNIA COURT OF APPEAL, SECOND APPELLATE DISTRICT, and is therefore the exclusively constitutionally-ordained branch of California Government constitutionally charged with, and having exclusive power over, with the enactment, modification, and/or repeal of C.R.C. Rule 8.1115, and is therefore the proper party-defendant and with standing

to respond to and answer Plaintiff's Second Count herein alleging the unconstitutionality of said Rule 8.1115.

21.    Plaintiff alleges that non-citation rule of C.R.C. Rule 8.1115 is violative of the 14th Amendment of the U.S. Constitution, in that it has violated Plaintiff's rights to due process and equal protection of the laws in the case below, for the following reasons:

A.    The mandatory non-citation rule of C.R.C. Rule 8.1115, enables and fosters a system of unconstitutional "selective prospectivity" among the Courts of Appeal, because it facilitates the rendering of unassailable, unreviewable, result-oriented decisions and outcomes in isolated cases, and has in fact done so in Plaintiff's individual case, which can neither be reversed nor even reviewed under the criteria of C.R.C. Rule 8.500(b), nor ever subjected to judicial or public scrutiny and/or criticism in the future, after which said Appellate Courts return to standing California precedent for every other case arising on the same facts predating the pronouncement of such unpublished decisions, thus denying citizens and residents of the State of California, and Plaintiff in this case, of their federal constitutional rights guaranteed under the 14th Amendment to due process and further denying such California citizens and residents, including Plaintiff herein, equal protection under the law by applying such new result-oriented rules of law arbitrarily, differently, and exclusively to such litigants, including Plaintiff, than they are applied to all other similarly-situated litigants.

B.    The mandatory non-citation rule of C.R.C. Rule 8.1115 axiomatically deprives litigants in civil cases resulting in unpublished Opinions of their right to judicial review under C.R.C. Rule 8.500(b) (for other than procedural reasons) as a result of the operation of C.R.C. Rule 8.1115, because such litigants cannot meet the review criteria under Rule 8.500(b) once an Opinion is unpublished, and Defendant SUPREME COURT OF CALIFORNIA, as a matter of both policy and empirical fact, does not grant and has not granted review of such unpublished decisions in civil cases not presenting an issue already before the Defendant SUPREME COURT OF CALIFORNIA arising from a previously published Opinion.

C.    Plaintiff is informed and believes that California is one of the only jurisdictions, if not the only jurisdiction in the United States currently, which still imposes a non-citation

rule as to unpublished opinions, as even the Federal Courts have adopted Federal Rules of Appellate Procedure, Rule 32.1, which prohibits rules such as C.R.C. Rule 8.1115, which restrict any citation and/or reliance upon, unpublished and/or uncertified opinions.

D.    In a November, 2006 Report and Recommendations of Defendant SUPREME COURT OF CALIFORNIA's Advisory Committee on Rules for Publication of Court of Appeal Opinions, found that California's Appellate Courts frequently based their decisions *not* to publish opinions on many factors unrelated and irrelevant to the merits of the issues including, but not limited to, insufficient time to prepare a published opinion, potential embarrassment of judges or attorneys, yet 72 percent of the appellate justices surveyed were against permitting litigants to draw Defendant CALIFORNIA SUPREME COURT's Court's attention to unpublished opinions within the appellate district that arguably conflicted with the decisions in their cases, whereas 67 percent of attorneys surveyed asserted that such attention of the Defendant CALIFORNIA SUPREME COURT should be so drawn, further supporting Plaintiff's contentions that the non-citation rule C.R.C. Rule 8.1105 has been employed to create and facilitate a system of unconstitutional "selective prospectivity" among the Courts of Appeal for the reasons and as alleged hereinabove.

22.    As a direct and legal result of the foregoing, the June 25, 2007 Unpublished Opinion by Defendant CALIFORNIA COURT OF APPEAL, SECOND APPELLATE DISTRICT, was and is the product of an unconstitutional system of unconstitutional "selective prospectivity" among the Courts of Appeal, and was promulgated in violation of Plaintiffs' 14th Amendment rights to due process and equal protection of the laws.

23.    There is presently a dispute and controversy as between the parties wherein Plaintiff contends that C.R.C. Rule 8.1115 prohibiting the citation or use of unpublished opinions is null and as violative of the Plaintiff's 14th Amendment rights, and facilitates an unconstitutional system of "selective prospectivity," whereas Defendant asserts that said Rule is not unconstitutional, and accordingly, a declaration from this Court as to the constitutionality of C.R.C. Rule 8.1115 is necessary and proper so as to ascertain the rights and obligations of the parties.

24.    Pursuant to 28 U.S.C. § 2201, Plaintiff seeks a declaratory judgment that C.R.C. Rule 8.1115 was and is unconstitutionally violative of Plaintiff's federally constitutionally-guaranteed due process and equal protection rights under the 14th Amendment.

25.    Plaintiff further has no plain, adequate or speedy remedy, and thus also seeks, pursuant to 28 U.S.C. § 2202, preliminary and permanent injunctive relief, barring the further operation and/or enforcement of C.R.C. Rule 8.1115.

## PRAYER

WHEREFORE, Plaintiff prays judgment against Defendants and each of them as follows:

1.    For a declaration and judgment by this Court pursuant to 28 U.S.C. § 2201 that the unpublished June 25, 2007 Opinion of Defendant CALIFORNIA COURT OF APPEAL, SECOND APPELLATE DISTRICT, was and is the product of an unconstitutional system of "selective prospectivity," and deprived Plaintiff of his 14th Amendment rights to due process and equal protection,  and is therefore null and void;

2.    For an order, pursuant to 28 U.S.C. § 2202, remanding Plaintiff's civil case to a new and different panel of Defendant CALIFORNIA COURT OF APPEAL, SECOND APPELLATE DISTRICT, for reconsideration *de novo* based upon the findings and judgment of this Court;

3.    For a declaration and judgment by this Court pursuant to 28 U.S.C. § 2201, that C.R.C. Rule 8.1115 was and is null and void as unconstitutionally violative of Plaintiff's federally due process and equal protection rights constitutionally-guaranteed by the 14th Amendment of the U.S. Constitution;

4.    For preliminary and permanent injunctive relief, pursuant to 28 U.S.C. § 2202, enjoining any operation of enforcement of C.R.C. Rule 8.1115.

5.    For costs of suit herein; and

BISNAR | CHASE

**PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF**

1     6.     For such other and further relief as this Court may deem proper and/or just.

2  DATED:    September 25, 2007

BISNAR | CHASE

By: _____

BRIAN D. CHASE
Attorneys for Plaintiff

BISNAR | CHASE

**PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF**

# EXHIBIT 1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION TWO

| | |
|---|---|
| JOSHUA HILD,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>SOUTHERN CALIFORNIA EDISON<br>COMPANY,<br><br>  Defendant and Appellant. | B185778<br><br>(Los Angeles County<br>Super. Ct. No. BC294734)<br><br>COURT OF APPEAL - SECOND DI...<br><br>**F I L E D**<br><br>JUN 2 5 2007<br><br>JOSEPH A. LANE _____ Clerk<br><br>_____ Deputy Cler |

APPEAL from a judgment of the Superior Court of Los Angeles County. Mel Recana, Judge. Reversed.

Law Offices of Don H. Zell, Don H. Zell, Robert E. Suttle; Michael Gonzales, Donald A. Redd; Greines, Martin, Stein & Richland, Robin Meadow, Tillman J. Breckenridge for Defendant and Appellant.

Bisnar & Chase, Brian D. Chase, Jerry N. Gans for Plaintiff and Respondent.

exhibit 1

A power company employee shot a teenager in the eye with a paintball gun. A jury found the company liable for the boy's injuries under the doctrine of respondeat superior. On appeal, the power company argues that it is not vicariously liable, as a matter of law, because its employee was acting outside the scope of her employment when the incident occurred. We agree with appellant. The evidence undisputedly shows that the employee was participating in a prank or joke with children playing near her work site. The prank had nothing to do with her job duties. As a result, the employee's tortious acts did not fall within the scope of her employment and her employer cannot be held liable for them. We reverse the judgment.

## FACTS

Kathy Magdaleno was a water systems operator employed by Southern California Edison (SCE). Her duty was to maintain the drinking water and wastewater treatment plants at Big Creek. She also maintained an SCE trout farm, to satisfy Department of Fish and Game requirements. Big Creek is a small community in the Sierras comprised of SCE employees and their families. SCE operates power generating stations at a chain of lakes in the area. The power and water treatment plants are on federally owned public land that is licensed to SCE. Anyone can recreate there.

On March 22, 2003, Magdaleno embarked on her usual duty of maintaining Big Creek's domestic water treatment plant, to test water quality and wash filters, as needed. She performed this duty three times per day. It was stipulated that Magdaleno was in the course of her employment when the accident occurred.

After arriving in her company truck at the treatment plant, Magdaleno sat down on the tailgate to smoke a cigarette. She heard children playing nearby. Two boys Magdaleno knew from Big Creek emerged from the brush. They exchanged pleasantries with Magdaleno, and indicated that they were being beaten at their paintball game by some older children. Magdaleno asked one of the boys, Jacob Smith, if she could examine his paintball gun. The safety was on when Smith handed her the gun. He showed her how to remove the safety. Paintball games were a popular recreational activity in Big Creek.

2

Magdaleno inquired whether Joshua Hild was up the hill. Hild, the 14-year-old son of an SCE employee, was a close friend of Magdaleno's family. Jacob Smith testified that Magdaleno said, "Call Josh down. I want to shoot him." Smith felt uneasy, but complied with her request. Smith's companion, Michael Gilfoy, likewise heard Magdaleno say that she wanted to shoot Hild as a prank. Magdaleno testified that her intent was to bring Hild down the hill and say to him, "Ha-ha, here you are out in the open." Both eyewitnesses testified that Magdaleno hid the gun behind a waist-high wall in front of her.

Magdaleno coaxed Hild to approach her by saying that she had a message from his mom. Hild motioned to indicate that he was removing himself from the paintball game, and took off his protective face mask. When Hild came into range, witnesses Smith and Gilfoy saw Magdaleno bring the gun up from behind the wall, and fire several shots at Hild. Magdaleno testified that she did not recall the gun going off.

One of the paintball projectiles struck Hild in the right eye. Afterward, Magdaleno was apologetic, and told Hild that she was "just messing around" or playing a joke on him. As a result of the shooting, Hild suffered a torn retina and eye inflammation. He lost most of his visual acuity, peripheral vision, and depth perception, and is legally blind in his right eye. His condition is permanent and irreversible. Eventually, he may become completely blind in that eye.

Magdaleno drove Hild home, then reported the shooting to her supervisor, Andrew McMillan. Distraught, Magdaleno told McMillan that she intended to shoot Hild with a paintball gun, but "I didn't mean to shoot him in the eye." McMillan instructed her to draft a handwritten statement describing the incident. McMillan later typed up Magdaleno's handwritten statement. The typewritten document was entitled "Horseplay Incident" (a title added by McMillan) and stated that Magdaleno fully intended to shoot Hild, though not in the face. McMillan testified that he did not make any substantive changes to Magdaleno's handwritten statement, only grammatical and spelling corrections. Magdaleno read the typewritten statement and signed it without making changes. A few days later, Magdaleno was interviewed by two people from SCE's

claims department. They drafted a second statement that included the words "I intended to shoot Josh, but didn't intend to hurt him." Magdaleno read the statement before signing it. Magdaleno told a different supervisor at Big Creek that she fired the gun but did not intend to shoot Hild in the head.

At trial, Magdaleno contradicted all of her previous oral and signed, written statements. She denied any intent to shoot Hild, characterizing the event as "a case of bad judgment. . . . I obviously did not know how to operate that paintball gun properly." She was holding the gun at her waist and did not realize that it had fired until Hild said he was shot in the eye. Magdaleno's original handwritten statement regarding the incident was thrown away.

Magdaleno conceded that her job duties at SCE do not include interacting with children. She was not performing her duties as a water treatment operator when the incident occurred, because paintball and other recreational activities have nothing to do with SCE's business enterprise. The company's business is to provide electricity to customers in Southern California.

SCE company rules prohibit employees from putting themselves in a position in which their personal interests conflicted with SCE's interests, or which might interfere with an employee's ability to perform his or her job as well as possible. Employees must act "with due regard for the health and safety of other employees and the public." In addition, SCE prohibits employees from engaging in horseplay or practical jokes, a rule that was discussed annually with Magdaleno. Magdaleno informed her supervisor that she had violated the horseplay rule by getting involved with children outside the water plant on March 22, 2003.

SCE supervisor McMillan testified that it was not a violation of SCE policy for Magdaleno to have a simple conversation with children at the job site, or to look at a paintball gun. Another supervisor at Big Creek testified that SCE would not approve of an employee firing a paintball gun while on duty. It was not part of Magdaleno's duties to talk to people, play with children, or engage in paintball fights. An SCE employee who engaged in paintball while on duty would be subject to corrective action.

Hild, through his guardian ad litem, sued SCE and Magdaleno for negligence, assault and battery. The claims against Magdaleno were dismissed before trial. Trial was by jury. By a margin of nine to three, the jury found that Magdaleno was acting within the scope of her employment when she harmed Hild. The panel awarded Hild $704,633. Judgment was entered on May 24, 2005.

SCE moved to set aside the judgment and for a new trial. The court denied the motion. Appeal is taken from the judgment and from the order denying SCE's motion for a new trial.

## DISCUSSION

### 1. Appeal And Review

Appeal is taken from the judgment. (Code Civ. Proc., § 904.1, subd. (a)(1).) The primary issue on appeal is whether Magdaleno was acting within the scope of her employment. "The issue of scope of employment is generally a question of fact for the jury to determine. (*Perez v. Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962, 968.) However, when the facts are undisputed and no conflicting inferences are possible, then the issue may be decided by the court as a question of law." (*Kephart v. Genuity, Inc.* (2006) 136 Cal.App.4th 280, 289.)

The facts in this case are somewhat disputed. Magdaleno testified that she did not intend to shoot Hild, whereas every other witness (including the two eyewitnesses and numerous SCE managers) testified that Magdaleno announced her intent to shoot Hild, though not in the face. Regardless of the conflict in the testimony, SCE argues that Magdaleno was outside the scope of her duties when she shot Hild, whether intentionally or accidentally.

### 2. Magdaleno Was Not Acting Within The Scope Of Her Employment

#### a  *Legal Principles Relating To Respondeat Superior*

"The rule of respondeat superior is familiar and simply stated: an employer is vicariously liable for the torts of its employees committed within the scope of the employment." (*Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 296 (*Lisa M.*).) An employer "will not be held liable for an assault or other

intentional tort that did not have a causal nexus to the employee's work." (*Id.* at p. 297.) "The nexus required for respondeat superior liability--that the tort be engendered by or arise from the work--is to be distinguished from 'but for' causation. [Footnote.] That the employment brought tortfeasor and victim together in time and place is not enough." (*Id.* at p. 298.) The required nexus is "the same for intentional and negligent torts." (*Ibid.*)

In various cases, the Supreme Court has said that "the incident leading to injury must be an 'outgrowth' of the employment"; that the risk of injury must be ""inherent in the working environment""; or that it is ""typical of or broadly incidental to the enterprise [the employer] has undertaken."" (*Lisa M., supra,* 12 Cal.4th at p. 298, citing *Carr v. Wm. C. Crowell Co.* (1946) 28 Cal.2d 652, 656-657, and *Hinman v. Westinghouse Elec Co* (1970) 2 Cal.3d 956, 960. See also *Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992, 1003 (*Farmers*).) Otherwise stated, the courts ask "whether the tort was, in a general way, foreseeable from the employee's duties. Respondeat superior liability should apply only to the types of injuries that "'as a practical matter are sure to occur in the conduct of the employer's enterprise.'" (*Lisa M., supra,* 12 Cal.4th at p. 299.) Foreseeability "'merely means that in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business.'" (*Ibid.*)

In *Lisa M.,* a male ultrasound imaging technician sexually molested a female patient during a medical examination. The Supreme Court concluded that the defendant hospital was not vicariously liable for the technician's misconduct under the doctrine of respondeat superior. (12 Cal.4th at p. 294.) The court agreed that the injurious event was causally related to the technician's employment: it would not have occurred but for his employment, which gave him the opportunity to meet and be alone with the plaintiff. Despite the existence of "but for" causation, the court determined that the sexual battery was not "engendered by," an "outgrowth" of, "'typical of or broadly incidental to,'" or "a general foreseeable consequence of" the hospital's enterprise. (*Id.* at pp. 299-300.) The assault was not motivated or triggered by anything in the employment activity (*id.* at

p. 301), nor was it a generally foreseeable consequence of the technician's authorized physical contact with a patient. (*Id.* at pp. 302-303.)

The requirement of a nexus between an injury and the employment applies equally to accidental misconduct by an employee. In *Bailey v. Filco, Inc.* (1996) 48 Cal.App.4th 1552, an employee injured a third party during a paid break from work, while driving to buy cookies for herself and a coworker. (*Id.* at p. 1557.) The court concluded that a personal cookie run while on break is not typical of or broadly incidental to her duties as a cashier at Filco's electronics and appliance business. (*Id.* at p. 1564-1565.)

Respondeat superior liability does not attach if the employee does something entirely personal at his workplace. In *Defino v. Agilent Technologies, Inc.* (2006) 145 Cal.App.4th 790, an employee sent threatening email messages from his work computer. The use of the employer's computer system to send hate messages was not part of his employment duties or an outgrowth of his job. Making cyber threats was a substantial deviation from the employee's duties, even if the employee was "present at the workplace and may have been performing regular employment functions before or after transmitting one or more of the threatening messages." (*Id.* at p. 813.) Thus, if there is a departure from job duties for personal reasons while at the workplace, and even if the employee is present upon and using company property for his personal endeavor, no vicarious liability attaches.

### b. *Application To This Case*

To impose liability, a fact finder would have to conclude that there is a nexus between Magdaleno's tortious act and SCE's business enterprise, and that her conduct was foreseeable from her duties. As a matter of law, this connection cannot be made because Magdaleno was engaged in purely personal conduct that was entirely unrelated to her employment at the time Hild's injury occurred.

Every witness in this case testified that Magdaleno was playing a practical joke or prank on Hild when the incident occurred. Eyewitnesses Smith and Gilfoy testified that before the shooting, Magdaleno said she wanted to shoot Hild as a prank. Hild testified that immediately after the shooting, Magdaleno told him that she was "messing around"

and playing a joke on him with the paintball gun. Magdaleno read and signed two written statements admitting to engaging in tomfoolery.[1] At trial, Magdaleno contradicted every other witness and her own signed statements; however, she admitted that she was playing a joke of some kind by bringing Hild down the hill so that she could say to him, "Ha-ha, here you are out in the open," i.e., where he could be easily shot with a paintball.

SCE could not reasonably foresee that Magdaleno would be distracted by children playing paintball instead of entering the water treatment plant where her duties lay, or that she would attempt to insinuate herself into the children's game by picking up a paintball gun and calling one of the children out from his hiding spot and into the open. Certainly, this series of acts is as unforeseeable as an employee going on an errand during a break and causing a traffic accident, as in the *Filco* case.

Regardless of whether the gun discharged accidentally (per Magdaleno) or intentionally (per the eyewitnesses), Magdaleno was undisputedly playing a prank. There is no conceivable support for a claim that playing pranks on third parties during work hours, outside the work premises, is "inherent in the work environment" of a water treatment plant, or is "typical of or broadly incidental to" SCE's enterprise of generating electrical power. (See *Lisa M., supra,* 12 Cal.4th at p. 298.) Mishandling a paintball gun and shooting a child in the face--accidentally or intentionally--is not the type of injury that is "'"sure to occur in the conduct of the employer's enterprise."'" (*Id.* at p. 299.) At

---

[1]    Hild attaches great importance to McMillan's disposal of Magdaleno's handwritten statement describing the shooting. We fail to see the significance. Magdaleno did not deny that she read and signed the statement typed by McMillan, nor did she deny that she read and signed the document drafted by SCE claims administrators a few days later, both of which indicate that she intended to shoot Hild. At trial, Magdaleno disclaimed any intent to shoot Hild. The outcome of this appeal does not hinge on whether the shooting was intentional or accidental. Magdaleno did not testify that her original statement proved that she was carrying out her duties for SCE at the time of the shooting, which is the only dispositive question that concerns us.

most, Magdaleno's employment brought her together with Hild in time and place, but that "is not enough" to impose vicarious liability on SCE. (*Id.* at p. 298.)

The employment link between Magdaleno and the paintball-playing children is far more remote than the link between the technician and his patient in *Lisa M.,* in which the Supreme Court found no vicarious liability. The tortfeasor and victim in *Lisa M.* did, at least, have a reason to make physical contact in a hospital examining room, though the contact devolved into impermissible acts of molestation. Magdaleno, by contrast, had absolutely no reason to engage in childish pranks involving paintball guns outside her employer's facility.

Even the most generous reading of the law does not permit the conclusion that playing with children and handling paintball guns were "acts *necessary* to the comfort, convenience, health, and welfare of the employee while at work." (*Farmers, supra,* 11 Cal.4th at p. 1004, italics added.) Rather, "'"it clearly appears that neither directly nor indirectly could [the employee] have been serving his employer"'" at the time of the injury. (*Ibid.*) There is simply no nexus between Hild's injury and Magdaleno's employment. Magdaleno was "engaged in purely personal activity" when the injury occurred. (*Le Elder v. Rice* (1994) 21 Cal.App.4th 1604, 1609.)

Hild argues that Magdaleno's conduct "was broadly incidental to Edison's enterprise" and was not "unusual or startling" because Big Creek is a company town where families know each other and SCE encourages good working relationships and mutual aid. Hild points out that no SCE rules were violated when Magdaleno greeted the children, looked at the paintball gun, or called out to Hild to exchange pleasantries with him.

It makes no difference that Magdaleno was acquainted with Hild and the children from Big Creek: the incident occurred on publicly owned land that anyone could have used for a paintball game. The misconduct does not fall within the scope of her employment merely because Magdaleno engaged in a prank with acquaintances rather than strangers. Though paintball was a popular recreational activity in Big Creek, no evidence was presented at trial that there were any prior incidences of SCE employees

playing paintball while on duty, or that SCE would tolerate such activity by employees who were supposed to be working. On the contrary, the testimony showed that any employee caught doing so would be subject to disciplinary action. The absence of a rule violation by Magdaleno does not mean that any of her acts fell within the scope of her employment as a water systems operator or were related in any way to SCE's enterprise. Nothing in the record suggests that Magdaleno's encounter with Hild was the culmination of a series of acts authorized by SCE. (See *Mary M v. City of Los Angeles* (1991) 54 Cal.3d 202, 219 [police officer who acted within the scope of his employment by detaining a woman for erratic driving misused his authority as a law enforcement officer when he drove her home and raped her. The rape was committed in the course of a series of acts authorized by the employer].)

Hild offers a laundry list of cases in which vicarious liability was imposed. In each case the injury was closely linked to the tortfeasor's employment. Hild's own descriptions demonstrate the nexus. Apart from the *Mary M.* case, Hild lists *Carr v. Wm C Crowell Co, supra*, 28 Cal.2d 652 (construction worker throws a hammer at his job site "during dispute over construction procedures"); *Fields v. Sanders* (1947) 29 Cal.2d 834 (employee truck driver assaults another driver "during a dispute about the employee's driving"); *Hiroshima v. Pacific Gas & Elec. Co.* (1936) 18 Cal.App.2d 24 (employee attacks a customer who "was upset about the employee's collection methods"); *Pritchard v. Gilbert* (1951) 107 Cal.App.2d 1 (salesman returning from a sales meeting attacks another person returning from the same meeting over a driving dispute); and *Perez v Van Groningen & Sons, Inc., supra*, 41 Cal.3d 962 (employee performing assigned job of disking an orchard injures a passenger on his tractor who should not have been riding with the employee). Hild's list continues, but in each case the injury-employment nexus is easily discernible. All of the cases are distinguishable.[2]

---

[2]    Hild relies heavily on *Sunderland v. Lockheed Martin Aeronautical Systems Support Co.* (2005) 130 Cal.App.4th 1, which, he suggests, somehow changes the law on

Finally, the public policy factors underlying the doctrine of respondeat superior do not support the imposition of vicarious liability. These are: "(1) to prevent recurrence of the tortious conduct; (2) to give greater assurance of compensation for the victim; and (3) to ensure that the victim's losses will be equitably borne by those who benefit from the enterprise that gave rise to the injury." (*Farmers, supra,* 11 Cal.4th at p. 1013.) The three factors are not legal standards, but they provide guidance to the courts in considering whether to impose vicarious liability on an employer. (*Lisa M., supra,* 12 Cal.4th at p. 304.)

The danger of severe personal injury and potential of ruinous civil liability already provides a powerful deterrent to the type of conduct that occurred here: most people have enough common sense and good judgment to know they should not mishandle a weapon that could maim any unprotected person in the vicinity. (See *Kephart v. Genuity, Inc , supra,* 136 Cal.App.4th at p. 297 [after an employee forced another car off the road in a road rage incident, court deemed this aberrant behavior that the majority of motorists do not engage in, so there was no deterrent effect in imposing liability on the employer].) While imposing liability on SCE would provide Hild with a deep pocket to assure his recovery, the purpose of respondeat superior liability is "to provide greater assurance of compensation to victim in circumstances where it is equitable to shift losses to the employer because the employer benefits from the injury-producing activity and such losses are, as a practical matter, sure to occur from the conduct of the enterprise." (*Ibid.*) SCE derived no benefit from Magdaleno's participation in a children's game of paintball when she was supposed to be inside the water treatment plant, testing the quality of the water. Due to the complete absence of a link between Hild's injury and SCE's business, it would not be equitable to shift the loss to the employer.

## 3. Reversible Error

respondeat superior. *Sunderland* does not change the law on respondeat superior. And, in any event, we follow Supreme Court authority like *Lisa M.,* rather than rules promulgated by other divisions. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

A judgment may be set aside if, after an examination of the whole record, the court is convinced that an error has resulted in a miscarriage of justice, was prejudicial, and that a different result would be probable if no error had occurred. (Cal. Const., art. VI, § 13; Code Civ. Proc., § 475; *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 802.) We have examined the entire record and applicable law. It is clear that the evidence does not support the imposition of respondeat superior liability in this case, in light of the controlling legal principles. The trial court's denial of SCE's motion for judgment n.o.v. was reversible error.

## 4. Other Issues Raised

In light of our conclusion, we need not reach the remaining issues raised by appellant in its brief.

## DISPOSITION

The judgment is reversed. Appellant may recover its costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

BOREN, P.J.

We concur:

ASHMANN-GERST, J.

CHAVEZ, J.

12

John Paul Bisnar
Bisnar & Chase LLP
1301 Dove Street
Suite 120
Newport Beach, CA  92660


Division 2
Joshua Hild
vs.
Southern California Edison
B185778

EXHIBIT 2

# California Supreme Court
# Advisory Committee on Rules for
# Publication of Court of Appeal Opinions

## Report and Recommendations
## November 2006



Supreme Court of California
350 McAllister Street
San Francisco, California 94102-4797

exhibit 2

Supreme Court of California
350 McAllister Street
San Francisco, CA 94102-4797

Copyright © 2006 by the Supreme Court of California. All rights reserved.

Except as permitted under the Copyright Act of 1976 and as otherwise expressly
provided herein, no part of this publication may be reproduced in any form or by any
means, electronic, online, or mechanical, including the use of information storage and
retrieval systems, without permission in writing from the copyright holder. Permission is
hereby granted to nonprofit institutions to reproduce and distribute this publication for
educational purposes if the copies are distributed at or below cost and credit the copyright
holder.

This report is available on the California Courts Web site:
www.courtinfo.ca.gov/courts/supreme/comm/#opin

*Printed on recycled paper*

## Supreme Court of California

### Chief Justice

Ronald M. George

### Associate Justices

Joyce L. Kennard

Marvin R. Baxter

Kathryn Mickle Werdegar

Ming W. Chin

Carlos R. Moreno

Carol A. Corrigan

## California Supreme Court
## Advisory Committee on Rules for
## Publication of Court of Appeal Opinions

### Chair

Hon. Kathryn Mickle Werdegar, Associate Justice, California Supreme Court

### Members

Hon. Joanne Parrilli, Associate Justice of the California Court of Appeal, First Appellate District, Division Three

Hon. Kathryn Doi Todd, Associate Justice of the California Court of Appeal, Second Appellate District, Division Two

Hon. Fred K. Morrison, Associate Justice of the California Court of Appeal, Third Appellate District, Division One

Hon. Patricia D. Benke, Associate Justice of the California Court of Appeal, Fourth Appellate District

Hon. Gene M. Gomes, Associate Justice of the California Court of Appeal, Fifth Appellate District

iii

Hon. Richard J. McAdams, Associate Justice of the California Court of Appeal, Sixth Appellate District

Ms. Victoria J. DeGoff, DeGoff & Sherman

Mr. Dennis A. Fischer, Law Offices of Dennis A. Fischer

Mr. Richard Frank, Chief Deputy Attorney General, California Department of Justice

Mr. Ellis J. Horvitz, Horvitz & Levy

Ms. Beth J. Jay, Principal Attorney to the Chief Justice, California Supreme Court

Mr. Edward Jessen, Reporter of Decisions, California Supreme Court

## Staff

Ms. Heather Anderson, Senior Attorney, Office of the General Counsel, Administrative Office of the Courts

Ms. Lyn Hinegardner, Attorney, Office of the General Counsel, Administrative Office of the Courts

Mr. Clifford Alumno, Court Services Analyst, Office of the General Counsel, Administrative Office of the Courts

Mr. Chris Belloli, Senior Research Analyst, Office of Court Research, Administrative Office of the Courts

CONTENTS

I.      Executive Summary                                                            1

II.     Introduction and Form of This Report                                         4

III.    The Advisory Committee and Its Process                                       6

        A.  The Advisory Committee Charge                                            6

        B.  Composition of the Advisory Committee                                    7

        C.  Meetings of the Advisory Committee                                       7

        D.  Information Gathering and Analysis                                       7

IV.     Background and Current Rules and Practices Regarding Publication             9

        A.  Brief Summary of the History of Publication in California                9

        B.  Work of Prior Committees on Publication in California                    10

        C.  Current Rules and Practices Regarding Publication in California          11

        D.  Practices Regarding Unpublished Opinions in California                   12
            1.  Online availability of unpublished opinions                         12
            2.  Tracking of unpublished opinions                                     13

        E.  Publication Rules and Practices in Other Jurisdictions                   13
            1.  Summary of rules and practices                                       13
            2.  Practical distinctions between California and other jurisdictions    14
            3.  Comparison to New York State                                         14

V.      California Publication Data                                                  16

        A.  Statewide Statistics on Publication                                      16
            1.  Statewide publication rates                                          16
            2.  Depublication orders                                                 17
            3.  Requests for publication                                             17
            4.  Granting review of published/unpublished opinions                    18

        B.  Publication Statistics by Appellate District and Division                19
            1.  Overall publication rate in each district and division              19
            2.  Factors affecting publication rates                                  24
                a.  Case-type mix                                                    25
                b.  Workload                                                         27

c.  Other factors ........................................................... 30

VI.  Surveys of Court of Appeal Justices and Appellate Attorneys .... 32

A.  Survey Drafting, Distribution, and Response Rates ........... 32
1.  Justices of the Court of Appeal ............................. 32
2.  Appellate attorneys .......................................... 33

B.  Survey Results ..................................................... 33
1.  Importance of the rule 8.1105(c) criteria ................ 33
2.  Publication process .......................................... 37
3.  The influence of other factors on publication .......... 38
4.  Unpublished opinions ....................................... 39
5.  Limited citation to unpublished opinions ............... 41
6.  Partial publication ........................................... 42
7.  Potential changes to rule 8.1105 ......................... 44

VII.  Committee Discussion and Preliminary Recommendations ........ 47

A.  Proposed Rule Revisions Recommended in Preliminary Report ... 48
1.  Amendments to existing criteria recommended in
preliminary report .......................................... 49
2.  New criteria recommended in preliminary report ...... 49
3.  Factors not to consider recommended in preliminary report ... 50

B.  Presumption Against Publication .............................. 50

C.  Other Preliminary Recommendations ........................ 51
1.  Future monitoring ........................................... 51
2.  Judicial education ........................................... 51
3.  Consider asking committee to address additional issues
a.  Partial publication or depublication .................. 51
b.  Unpublished opinions ................................... 52
c.  Appellate divisions of the superior court and other
unfinished matters ..................................... 52

VIII.  Public Comment on Preliminary Report and Recommendations ... 53

A.  Circulation of Preliminary Report and Recommendations ... 53
1.  The invitation to comment ................................ 53
2.  Summary of comments received ......................... 53
3.  Eliminating the presumption against publication and other
changes made in response to the public comments ... 54

B.  Circulation of Revised Recommendations for Amendment to
Rule 8.1105 of the California Rules of Court ................ 55

|   | 1. The invitation to comment | 55 |
|---|---|---|
|   | 2. Summary of comments received | 55 |
|   | 3. Changes made in response to the public comments | 55 |

| IX. | Conclusion and Final Recommendations | 57 |
|---|---|---|

| X. | Appendixes |
|---|---|

A. California Rules of Court, rules 8.1100 through 8.1125

B. 1971 Report of the Committee on Selective Publication of Appellate Court Opinions

C. 1979 Judicial Council Report on Proposed Rule Amendments for Publication of Appellate Opinions

D. 2001 White Paper on Unpublished Opinions of the Court of Appeal

E. Analysis of Data on Publication Rates for the Courts of Appeal

F. Survey of Justices of the Courts of Appeal

G. Survey of Appellate Attorneys

H. List of Attorneys and Organizations Contacted for Survey

I. Results of Surveys of Justice of the Courts of Appeal and Appellate Attorneys

J. October 2005 Preliminary Report and Recommendations of the Supreme Court Advisory Committee on Rules for Publication of Court of Appeal Opinions

K. 2005 Invitation to Comment on the Preliminary Report and Recommendations of the Supreme Court Advisory Committee on Rules for Publication of Court of Appeal Opinions

L. Chart summarizing public comments received in response to 2005 Invitation to Comment

M. 2006 Invitation to Comment on Revised Recommendation for Amendment to California Rules of Court, Rule 976 (now rule 8.1105)

N. Chart summarizing public comments received in response to 2006 Invitation to Comment

## I. Executive Summary

The California Supreme Court appointed the California Supreme Court Advisory Committee on Rules for Publication of Court of Appeal Opinions (the committee) to review the rules for the publication of Court of Appeal opinions and recommend whether the rules should be changed to better ensure the publication of those opinions that may assist in the reasoned and orderly development of the law. The committee reviewed practices in other jurisdictions, relevant literature, and recent statistical information on the publication rates of the California Courts of Appeal. It also surveyed the justices of the Courts of Appeal and appellate attorneys concerning the current criteria for publication in rule 8.1105 (former rule 976),[1] the courts' publication practices, and various potential changes in publication procedures.

The information gathered and analyzed by the committee suggests that, by and large, the current publication rules and practices have been successful in creating and managing an accessible body of precedential appellate opinions that provide useful guidance for litigants and the public. While the committee found that certain appellate districts and divisions within districts do have higher publication rates than others, the committee's statistical analysis and, to a lesser extent, the survey results suggest several neutral factors that explain most of those differences. When analyzed over time and controlled for case type and judicial workload, publication rates appear to be relatively consistent across most of the districts and divisions. The information gathered by the committee, particularly the responses to the surveys, also suggests, however, that some important adjustments should be made in the publication rules to better ensure the publication of all those opinions that may assist in the reasoned and orderly development of the law and to improve public confidence in the publication process.

Based on the information it collected, the committee prepared a preliminary report and recommendations. This preliminary report concluded that rule 8.1105 could be modified to further encourage the publication of all cases that might provide helpful guidance to the lower courts and practitioners and to increase public confidence in the publication process. To achieve this, the committee preliminarily recommended clarifying and expanding the criteria for publication of Court of Appeal opinions in rule 8.1105 and adding a provision identifying factors that should not affect the decision whether to certify an opinion for publication. This preliminary report did not, however, recommend changing the presumption against publication in rule 8.1105.

---

[1] In June 2006, the Supreme Court approved the reorganization and renumbering of the California Rules of Court relating to publication of appellate opinions and other matters within the rulemaking authority of the court, effective January 1, 2007. The Supreme Court's action was part of an overall reorganization and renumbering of the California Rules of Court and Standards of Judicial Administration, the remainder of which was approved by the Judicial Council of California at its June 30, 2006, meeting. Under this reorganization, the rules relating to publication that were numbered 976 et seq. have been renumbered as rules 8.1100 et seq., and new format conventions were adopted. Rule 976 was renumbered as rule 8.1105. Throughout this report, the rules and proposed rule amendments are shown using the new rule numbers that will become effective January 1, 2007.

The preliminary report and recommendations were circulated for public comment in the winter of 2005–2006. Many commentators suggested that, to more fully achieve the committee's goals of better ensuring the publication of those opinions that may assist in the reasoned and orderly development of the law and improving public confidence in the publication process, the committee should consider additional changes to rule 8.1105. In particular, a significant number of commentators urged eliminating the presumption against publication.

Based on these comments, the committee modified its recommendations to include replacing the current presumption against publication in rule 8.1105 with a presumption in favor of publication if an opinion meets one or more of the criteria specified in the rule. The committee's modified recommendations were circulated for further public comment in April 2006. The majority of those who commented on the modified recommendations supported these proposed amendments to rule 8.1105.

Based on all of the information that it gathered and analyzed concerning the standards for the publication of Courts of Appeal opinions and the comments received on both its preliminary report and the revised proposal to amend rule 8.1105, the committee recommends that the Supreme Court take the following actions:

1.  Adopt proposed amendments to rule 8.1105 of the California Rules of Court, effective April 1, 2007, to:

    (a) Replace the presumption against publication with a presumption in favor of publication if the opinion meets one or more of the criteria specified in the rule;

    (b) Clarify and expand the criteria that the Courts of Appeal and the appellate divisions of the superior courts should consider when deciding whether to certify an opinion for publication; and

    (c) Identify factors that should not be considered in deciding whether to certify an opinion for publication.

2.  Assuming the court adopts the proposed amendments, provision should be made to periodically evaluate their impact and whether additional changes should be recommended.

3.  Encourage further judicial education regarding the publication rules and related practices.

4.  Consider having a committee:

    (a) Evaluate the feasibility of procedures whereby the Supreme Court could order the partial publication or partial depublication of a Court of Appeal opinion.

(b) Evaluate the possibility of expanding the circumstances under which parties may draw the attention of the Court or Appeal or Supreme Court to unpublished opinions.

(c) Review and make recommendations concerning the publication of opinions of the appellate divisions of the superior court and other matters within the committee's charge that were not addressed in this report.

The full text of the amendments to rule 8.1105 recommended by the committee is attached beginning on page 59. The committee believes that making these recommended changes and implementing the committee's other recommendations will clarify the criteria for publication for both justices and attorneys, better ensure the publication of all those opinions that may assist in the reasoned and orderly development of the law, and improve public confidence in the publication process.

## II. Introduction and Form of This Report

The California Constitution gives the Supreme Court the authority and responsibility to decide which appellate opinions are published.[2] Under that authority, the court has established standards for publication of appellate opinions, set forth in rule 8.1100 et seq. of the California Rules of Court. These rules currently provide that all opinions of the Supreme Court are published but that an opinion of the Courts of Appeal or the appellate divisions of the superior courts may not be published unless it meets one of four specified criteria, i.e., the opinion:

(1) Establishes a new rule of law, applies an existing rule to a set of facts significantly different from those stated in published opinions, or modifies or criticizes, with reasons given, an existing rule;

(2) Resolves or creates an apparent conflict in the law;

(3) Involves a legal issue of continuing public interest; or

(4) Makes a significant contribution to legal literature by reviewing either the development of a common law rule or the legislative or judicial history of a provision of a constitution, statute, or other written law. (Rule 8.1105(c).)

Court of Appeal opinions that meet these criteria and are published are citable; those that are not published are not citable but are available to the public from a variety of sources.[3]

These rules for selective publication of intermediate appellate court opinions are designed to create and manage an accessible body of precedential appellate opinions that provide useful guidance while avoiding overwhelming litigants and the public with thousands of opinions that are of limited value as precedent. Some members of the California legal community, however, have long advocated that all opinions of the Courts of Appeal should be published or, in the alternative, that all opinions should be made citable. Proponents of unlimited publication argue that unpublished opinions may be used to suppress certain types of decisions or to discourage Supreme Court review. Opponents of unlimited publication note that a very large number of opinions are issued by the Courts of Appeal in California because, unlike in most other jurisdictions, the California Constitution requires that all causes be decided in writing with reasons stated. Publishing all of these opinions, they argue, will make it more difficult and expensive for litigants and the public to find the opinions that provide useful guidance. The debate about whether all opinions should be published or citable is not unique to California. For example, the United States Supreme recently approved new rule 32.1 of the Federal

---

[2] Article VI, section 14 of the California Constitution provides in part: "The Legislature shall provide for the prompt publication of such opinions of the Supreme Court and courts of appeal as the Supreme Court deems appropriate, and those opinions shall be available for publication by any person."

[3] Opinions not certified for publication have always been available to the public at the clerks' offices at the Courts of Appeal. Today, unpublished opinions are accessible on the California Courts Web site as well as online legal research databases.

Rules of Appellate Procedure, which will allow citation to all unpublished federal decisions issued on or after effect January 1, 2007.

After various legislators expressed interest in ensuring that all appropriate opinions be readily available, Chief Justice Ronald M. George consulted with the Supreme Court and appointed the committee in November 2004. Associate Justice Kathryn M. Werdegar was named committee chair. As discussed more fully in part III of this report, the court charged the committee with reviewing the rules for publication of opinions of the Courts of Appeal and with recommending to the court whether the existing criteria or procedures set forth in the rules should be changed to better ensure the publication of those opinions that may assist in the reasoned and orderly development of the law.

This report describes the committee and its process (part III) and the background and history of selective publication in California and in certain other jurisdictions (part IV). It describes the statistics and surveys upon which the committee relied (parts V and VI). It then describes the committee's preliminary recommendations for amending rule 8.1105, the public comments received on the preliminary recommendations, and the changes that the committee made in its recommendations in response to those comments (parts VII and VIII). In its conclusion, the committee makes its final recommendations for amending rule 8.1105 and also recommends areas for future inquiry (part IX). All of the supporting documents regarding the publication statistics and surveys are included as appendixes to this report (part X).