## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JOSHUA HILD,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SOUTHERN CALIFORNIA EDISON COMPANY,<br><br>    Defendant and Appellant. | B185778<br><br>(Los Angeles County<br>Super. Ct. No. BC294734)<br><br>COURT OF APPEAL - SECOND DI...<br><br>**F I L E D**<br><br>JUN 2 5 2007<br><br>JOSEPH A. LANE       Clerk<br>                     Deputy Cle· |

APPEAL from a judgment of the Superior Court of Los Angeles County. Mel Recana, Judge. Reversed.

Law Offices of Don H. Zell, Don H. Zell, Robert E. Suttle; Michael Gonzales, Donald A. Redd; Greines, Martin, Stein & Richland, Robin Meadow, Tillman J. Breckenridge for Defendant and Appellant.

Bisnar & Chase, Brian D. Chase, Jerry N. Gans for Plaintiff and Respondent.

A power company employee shot a teenager in the eye with a paintball gun. A jury found the company liable for the boy's injuries under the doctrine of respondeat superior. On appeal, the power company argues that it is not vicariously liable, as a matter of law, because its employee was acting outside the scope of her employment when the incident occurred. We agree with appellant. The evidence undisputedly shows that the employee was participating in a prank or joke with children playing near her work site. The prank had nothing to do with her job duties. As a result, the employee's tortious acts did not fall within the scope of her employment and her employer cannot be held liable for them. We reverse the judgment.

## FACTS

Kathy Magdaleno was a water systems operator employed by Southern California Edison (SCE). Her duty was to maintain the drinking water and wastewater treatment plants at Big Creek. She also maintained an SCE trout farm, to satisfy Department of Fish and Game requirements. Big Creek is a small community in the Sierras comprised of SCE employees and their families. SCE operates power generating stations at a chain of lakes in the area. The power and water treatment plants are on federally owned public land that is licensed to SCE. Anyone can recreate there.

On March 22, 2003, Magdaleno embarked on her usual duty of maintaining Big Creek's domestic water treatment plant, to test water quality and wash filters, as needed. She performed this duty three times per day. It was stipulated that Magdaleno was in the course of her employment when the accident occurred.

After arriving in her company truck at the treatment plant, Magdaleno sat down on the tailgate to smoke a cigarette. She heard children playing nearby. Two boys Magdaleno knew from Big Creek emerged from the brush. They exchanged pleasantries with Magdaleno, and indicated that they were being beaten at their paintball game by some older children. Magdaleno asked one of the boys, Jacob Smith, if she could examine his paintball gun. The safety was on when Smith handed her the gun. He showed her how to remove the safety. Paintball games were a popular recreational activity in Big Creek.

Magdaleno inquired whether Joshua Hild was up the hill. Hild, the 14-year-old son of an SCE employee, was a close friend of Magdaleno's family. Jacob Smith testified that Magdaleno said, "Call Josh down. I want to shoot him." Smith felt uneasy, but complied with her request. Smith's companion, Michael Gilfoy, likewise heard Magdaleno say that she wanted to shoot Hild as a prank. Magdaleno testified that her intent was to bring Hild down the hill and say to him, "Ha-ha, here you are out in the open." Both eyewitnesses testified that Magdaleno hid the gun behind a waist-high wall in front of her.

Magdaleno coaxed Hild to approach her by saying that she had a message from his mom. Hild motioned to indicate that he was removing himself from the paintball game, and took off his protective face mask. When Hild came into range, witnesses Smith and Gilfoy saw Magdaleno bring the gun up from behind the wall, and fire several shots at Hild. Magdaleno testified that she did not recall the gun going off.

One of the paintball projectiles struck Hild in the right eye. Afterward, Magdaleno was apologetic, and told Hild that she was "just messing around" or playing a joke on him. As a result of the shooting, Hild suffered a torn retina and eye inflammation. He lost most of his visual acuity, peripheral vision, and depth perception, and is legally blind in his right eye. His condition is permanent and irreversible. Eventually, he may become completely blind in that eye.

Magdaleno drove Hild home, then reported the shooting to her supervisor, Andrew McMillan. Distraught, Magdaleno told McMillan that she intended to shoot Hild with a paintball gun, but "I didn't mean to shoot him in the eye." McMillan instructed her to draft a handwritten statement describing the incident. McMillan later typed up Magdaleno's handwritten statement. The typewritten document was entitled "Horseplay Incident" (a title added by McMillan) and stated that Magdaleno fully intended to shoot Hild, though not in the face. McMillan testified that he did not make any substantive changes to Magdaleno's handwritten statement, only grammatical and spelling corrections. Magdaleno read the typewritten statement and signed it without making changes. A few days later, Magdaleno was interviewed by two people from SCE's

claims department. They drafted a second statement that included the words "I intended to shoot Josh, but didn't intend to hurt him." Magdaleno read the statement before signing it. Magdaleno told a different supervisor at Big Creek that she fired the gun but did not intend to shoot Hild in the head.

At trial, Magdaleno contradicted all of her previous oral and signed, written statements. She denied any intent to shoot Hild, characterizing the event as "a case of bad judgment. . . . I obviously did not know how to operate that paintball gun properly." She was holding the gun at her waist and did not realize that it had fired until Hild said he was shot in the eye. Magdaleno's original handwritten statement regarding the incident was thrown away.

Magdaleno conceded that her job duties at SCE do not include interacting with children. She was not performing her duties as a water treatment operator when the incident occurred, because paintball and other recreational activities have nothing to do with SCE's business enterprise. The company's business is to provide electricity to customers in Southern California.

SCE company rules prohibit employees from putting themselves in a position in which their personal interests conflicted with SCE's interests, or which might interfere with an employee's ability to perform his or her job as well as possible. Employees must act "with due regard for the health and safety of other employees and the public." In addition, SCE prohibits employees from engaging in horseplay or practical jokes, a rule that was discussed annually with Magdaleno. Magdaleno informed her supervisor that she had violated the horseplay rule by getting involved with children outside the water plant on March 22, 2003.

SCE supervisor McMillan testified that it was not a violation of SCE policy for Magdaleno to have a simple conversation with children at the job site, or to look at a paintball gun. Another supervisor at Big Creek testified that SCE would not approve of an employee firing a paintball gun while on duty. It was not part of Magdaleno's duties to talk to people, play with children, or engage in paintball fights. An SCE employee who engaged in paintball while on duty would be subject to corrective action.

4

Hild, through his guardian ad litem, sued SCE and Magdaleno for negligence, assault and battery. The claims against Magdaleno were dismissed before trial. Trial was by jury. By a margin of nine to three, the jury found that Magdaleno was acting within the scope of her employment when she harmed Hild. The panel awarded Hiid $704,633. Judgment was entered on May 24, 2005.

SCE moved to set aside the judgment and for a new trial. The court denied the motion. Appeal is taken from the judgment and from the order denying SCE's motion for a new trial.

## DISCUSSION

### 1. Appeal And Review

Appeal is taken from the judgment. (Code Civ. Proc., § 904.1, subd. (a)(1).) The primary issue on appeal is whether Magdaleno was acting within the scope of her employment. "The issue of scope of employment is generally a question of fact for the jury to determine. (*Perez v. Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962, 968.) However, when the facts are undisputed and no conflicting inferences are possible, then the issue may be decided by the court as a question of law." (*Kephart v. Genuity, Inc.* (2006) 136 Cal.App.4th 280, 289.)

The facts in this case are somewhat disputed. Magdaleno testified that she did not intend to shoot Hild, whereas every other witness (including the two eyewitnesses and numerous SCE managers) testified that Magdaleno announced her intent to shoot Hild, though not in the face  Regardless of the conflict in the testimony, SCE argues that Magdaleno was outside the scope of her duties when she shot Hild, whether intentionally or accidentally.

### 2. Magdaleno Was Not Acting Within The Scope Of Her Employment

#### a *Legal Principles Relating To Respondeat Superior*

"The rule of respondeat superior is familiar and simply stated: an employer is vicariously liable for the torts of its employees committed within the scope of the employment." (*Lisa M v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 296 (*Lisa M.*).) An employer "will not be held liable for an assault or other

intentional tort that did not have a causal nexus to the employee's work." (*Id.* at p. 297.) "The nexus required for respondeat superior liability--that the tort be engendered by or arise from the work--is to be distinguished from 'but for' causation. [Footnote.] That the employment brought tortfeasor and victim together in time and place is not enough." (*Id.* at p. 298.) The required nexus is "the same for intentional and negligent torts." (*Ibid.*)

In various cases, the Supreme Court has said that "the incident leading to injury must be an 'outgrowth' of the employment"; that the risk of injury must be ""inherent in the working environment""; or that it is ""typical of or broadly incidental to the enterprise [the employer] has undertaken."" (*Lisa M., supra,* 12 Cal.4th at p. 298, citing *Carr v. Wm. C. Crowell Co.* (1946) 28 Cal.2d 652, 656-657, and *Hinman v. Westinghouse Elec Co* (1970) 2 Cal.3d 956, 960. See also *Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992, 1003 (*Farmers*).) Otherwise stated, the courts ask "whether the tort was, in a general way, foreseeable from the employee's duties. Respondeat superior liability should apply only to the types of injuries that "'as a practical matter are sure to occur in the conduct of the employer's enterprise."" (*Lisa M., supra,* 12 Cal.4th at p. 299.) Foreseeability "'merely means that in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business.'" (*Ibid.*)

In *Lisa M.*, a male ultrasound imaging technician sexually molested a female patient during a medical examination. The Supreme Court concluded that the defendant hospital was not vicariously liable for the technician's misconduct under the doctrine of respondeat superior. (12 Cal.4th at p. 294.) The court agreed that the injurious event was causally related to the technician's employment: it would not have occurred but for his employment, which gave him the opportunity to meet and be alone with the plaintiff. Despite the existence of "but for" causation, the court determined that the sexual battery was not "engendered by," an "outgrowth" of, "'typical of or broadly incidental to,'" or "a general foreseeable consequence of" the hospital's enterprise. (*Id.* at pp. 299-300.) The assault was not motivated or triggered by anything in the employment activity (*id.* at

p. 301), nor was it a generally foreseeable consequence of the technician's authorized physical contact with a patient. (*Id.* at pp. 302-303.)

The requirement of a nexus between an injury and the employment applies equally to accidental misconduct by an employee. In *Bailey v. Filco, Inc.* (1996) 48 Cal.App.4th 1552, an employee injured a third party during a paid break from work, while driving to buy cookies for herself and a coworker. (*Id.* at p. 1557.) The court concluded that a personal cookie run while on break is not typical of or broadly incidental to her duties as a cashier at Filco's electronics and appliance business. (*Id.* at p. 1564-1565.)

Respondeat superior liability does not attach if the employee does something entirely personal at his workplace. In *Defino v. Agilent Technologies, Inc* (2006) 145 Cal.App.4th 790, an employee sent threatening email messages from his work computer. The use of the employer's computer system to send hate messages was not part of his employment duties or an outgrowth of his job. Making cyber threats was a substantial deviation from the employee's duties, even if the employee was "present at the workplace and may have been performing regular employment functions before or after transmitting one or more of the threatening messages." (*Id.* at p. 813.) Thus, if there is a departure from job duties for personal reasons while at the workplace, and even if the employee is present upon and using company property for his personal endeavor, no vicarious liability attaches.

### b. *Application To This Case*

To impose liability, a fact finder would have to conclude that there is a nexus between Magdaleno's tortious act and SCE's business enterprise, and that her conduct was foreseeable from her duties. As a matter of law, this connection cannot be made because Magdaleno was engaged in purely personal conduct that was entirely unrelated to her employment at the time Hild's injury occurred.

Every witness in this case testified that Magdaleno was playing a practical joke or prank on Hild when the incident occurred. Eyewitnesses Smith and Gilfoy testified that before the shooting, Magdaleno said she wanted to shoot Hild as a prank. Hild testified that immediately after the shooting, Magdaleno told him that she was "messing around"

and playing a joke on him with the paintball gun. Magdaleno read and signed two written statements admitting to engaging in tomfoolery.[1] At trial, Magdaleno contradicted every other witness and her own signed statements; however, she admitted that she was playing a joke of some kind by bringing Hild down the hill so that she could say to him, "Ha-ha, here you are out in the open," i.e., where he could be easily shot with a paintball.

SCE could not reasonably foresee that Magdaleno would be distracted by children playing paintball instead of entering the water treatment plant where her duties lay, or that she would attempt to insinuate herself into the children's game by picking up a paintball gun and calling one of the children out from his hiding spot and into the open. Certainly, this series of acts is as unforeseeable as an employee going on an errand during a break and causing a traffic accident, as in the *Filco* case.

Regardless of whether the gun discharged accidentally (per Magdaleno) or intentionally (per the eyewitnesses), Magdaleno was undisputedly playing a prank. There is no conceivable support for a claim that playing pranks on third parties during work hours, outside the work premises, is "inherent in the work environment" of a water treatment plant. or is "typical of or broadly incidental to" SCE's enterprise of generating electrical power. (See *Lisa M., supra,* 12 Cal.4th at p. 298.) Mishandling a paintball gun and shooting a child in the face--accidentally or intentionally--is not the type of injury that is "'"sure to occur in the conduct of the employer's enterprise."'" (*Id.* at p. 299.) At

---

[1]    Hild attaches great importance to McMillan's disposal of Magdaleno's handwritten statement describing the shooting. We fail to see the significance. Magdaleno did not deny that she read and signed the statement typed by McMillan, nor did she deny that she read and signed the document drafted by SCE claims administrators a few days later, both of which indicate that she intended to shoot Hild. At trial, Magdaleno disclaimed any intent to shoot Hild   The outcome of this appeal does not hinge on whether the shooting was intentional or accidental. Magdaleno did not testify that her original statement proved that she was carrying out her duties for SCE at the time of the shooting, which is the only dispositive question that concerns us.

8

most, Magdaleno's employment brought her together with Hild in time and place, but that "is not enough" to impose vicarious liability on SCE. (*Id.* at p. 298.)

The employment link between Magdaleno and the paintball-playing children is far more remote than the link between the technician and his patient in *Lisa M.*, in which the Supreme Court found no vicarious liability. The tortfeasor and victim in *Lisa M.* did, at least, have a reason to make physical contact in a hospital examining room, though the contact devolved into impermissible acts of molestation. Magdaleno, by contrast, had absolutely no reason to engage in childish pranks involving paintball guns outside her employer's facility.

Even the most generous reading of the law does not permit the conclusion that playing with children and handling paintball guns were "acts *necessary* to the comfort, convenience, health, and welfare of the employee while at work." (*Farmers, supra,* 11 Cal.4th at p. 1004, italics added.) Rather, ""it clearly appears that neither directly nor indirectly could [the employee] have been serving his employer"" at the time of the injury. (*Ibid.*) There is simply no nexus between Hild's injury and Magdaleno's employment. Magdaleno was "engaged in purely personal activity" when the injury occurred. (*Le Elder v. Rice* (1994) 21 Cal.App.4th 1604, 1609.)

Hild argues that Magdaleno's conduct "was broadly incidental to Edison's enterprise" and was not "unusual or startling" because Big Creek is a company town where families know each other and SCE encourages good working relationships and mutual aid. Hild points out that no SCE rules were violated when Magdaleno greeted the children, looked at the paintball gun, or called out to Hild to exchange pleasantries with him.

It makes no difference that Magdaleno was acquainted with Hild and the children from Big Creek: the incident occurred on publicly owned land that anyone could have used for a paintball game. The misconduct does not fall within the scope of her employment merely because Magdaleno engaged in a prank with acquaintances rather than strangers. Though paintball was a popular recreational activity in Big Creek, no evidence was presented at trial that there were any prior incidences of SCE employees

playing paintball while on duty, or that SCE would tolerate such activity by employees who were supposed to be working. On the contrary, the testimony showed that any employee caught doing so would be subject to disciplinary action. The absence of a rule violation by Magdaleno does not mean that any of her acts fell within the scope of her employment as a water systems operator or were related in any way to SCE's enterprise. Nothing in the record suggests that Magdaleno's encounter with Hild was the culmination of a series of acts authorized by SCE. (See *Mary M v City of Los Angeles* (1991) 54 Cal.3d 202, 219 [police officer who acted within the scope of his employment by detaining a woman for erratic driving misused his authority as a law enforcement officer when he drove her home and raped her. The rape was committed in the course of a series of acts authorized by the employer].)

Hild offers a laundry list of cases in which vicarious liability was imposed. In each case the injury was closely linked to the tortfeasor's employment. Hild's own descriptions demonstrate the nexus. Apart from the *Mary M.* case, Hild lists *Carr v. Wm C Crowell Co, supra,* 28 Cal.2d 652 (construction worker throws a hammer at his job site "during dispute over construction procedures"); *Fields v. Sanders* (1947) 29 Cal.2d 834 (employee truck driver assaults another driver "during a dispute about the employee's driving"); *Hiroshima v. Pacific Gas & Elec. Co.* (1936) 18 Cal.App.2d 24 (employee attacks a customer who "was upset about the employee's collection methods"); *Pritchard v. Gilbert* (1951) 107 Cal.App.2d 1 (salesman returning from a sales meeting attacks another person returning from the same meeting over a driving dispute); and *Perez v Van Groningen & Sons, Inc., supra,* 41 Cal.3d 962 (employee performing assigned job of disking an orchard injures a passenger on his tractor who should not have been riding with the employee). Hild's list continues, but in each case the injury-employment nexus is easily discernible. All of the cases are distinguishable.[2]

---

[2]    Hild relies heavily on *Sunderland v. Lockheed Martin Aeronautical Systems Support Co.* (2005) 130 Cal.App.4th 1, which, he suggests, somehow changes the law on

Finally, the public policy factors underlying the doctrine of respondeat superior do not support the imposition of vicarious liability. These are: "(1) to prevent recurrence of the tortious conduct; (2) to give greater assurance of compensation for the victim; and (3) to ensure that the victim's losses will be equitably borne by those who benefit from the enterprise that gave rise to the injury." (*Farmers, supra,* 11 Cal.4th at p. 1013.) The three factors are not legal standards, but they provide guidance to the courts in considering whether to impose vicarious liability on an employer. (*Lisa M., supra,* 12 Cal.4th at p. 304.)

The danger of severe personal injury and potential of ruinous civil liability already provides a powerful deterrent to the type of conduct that occurred here: most people have enough common sense and good judgment to know they should not mishandle a weapon that could maim any unprotected person in the vicinity. (See *Kephart v. Genuity, Inc , supra,* 136 Cal.App.4th at p. 297 [after an employee forced another car off the road in a road rage incident, court deemed this aberrant behavior that the majority of motorists do not engage in, so there was no deterrent effect in imposing liability on the employer].) While imposing liability on SCE would provide Hild with a deep pocket to assure his recovery, the purpose of respondeat superior liability is "to provide greater assurance of compensation to victim in circumstances where it is equitable to shift losses to the employer because the employer benefits from the injury-producing activity and such losses are, as a practical matter, sure to occur from the conduct of the enterprise." (*Ibid.*) SCE derived no benefit from Magdaleno's participation in a children's game of paintball when she was supposed to be inside the water treatment plant, testing the quality of the water. Due to the complete absence of a link between Hild's injury and SCE's business, it would not be equitable to shift the loss to the employer.

### 3. Reversible Error

---

respondeat superior. *Sunderland* does not change the law on respondeat superior. And, in any event, we follow Supreme Court authority like *Lisa M.*, rather than rules promulgated by other divisions. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

A judgment may be set aside if, after an examination of the whole record, the court is convinced that an error has resulted in a miscarriage of justice, was prejudicial, and that a different result would be probable if no error had occurred   (Cal. Const., art. VI, § 13; Code Civ. Proc., § 475; *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 802.)  We have examined the entire record and applicable law.  It is clear that the evidence does not support the imposition of respondeat superior liability in this case, in light of the controlling legal principles.  The trial court's denial of SCE's motion for judgment n.o.v. was reversible error.

**4. Other Issues Raised**

In light of our conclusion, we need not reach the remaining issues raised by appellant in its brief.

**DISPOSITION**

The judgment is reversed.  Appellant may recover its costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.

BOREN, P.J.

We concur:

ASHMANN-GERST, J.

CHAVEZ, J.

12

John Paul Bisnar
Bisnar & Chase LLP
1301 Dove Street
Suite 120
Newport Beach, CA  92660


Division 2
Joshua Hild
vs.
Southern California Edison
B185778

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

COURT OF APPEAL · SECOND DIST.

F I L E D

JUL 2 4 2007

JOSEPH A. LANE                Clerk

_____ Deputy Clerk

| | |
|---|---|
| JOSHUA HILD,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>SOUTHERN CALIFORNIA EDISON<br>COMPANY,<br><br>        Defendant and Appellant. | B185778<br><br>(Los Angeles County<br>Super. Ct. No. BC294734)<br><br>**ORDER MODIFYING OPINION**<br><br>[No Change in Judgment] |

The COURT:

The opinion filed herein on June 25 2007, is ordered modified as follows:

Page 12, Disposition, insert the following sentence between the two sentences:  The trial court is directed to enter judgment in favor of appellant Southern California Edison Company.

The Disposition now reads in its entirety:

The judgment is reversed.  The trial court is directed to enter judgment in favor of appellant Southern California Edison Company.  Appellant may recover its costs on appeal.

This modification does not effect a change in judgment.