**EXHIBIT 2**

# S155161

Second Appellate District, Division Two No. B185778

# IN THE SUPREME COURT OF CALIFORNIA

JOSHUA HILD, etc.,
Plaintiff and Respondent,

vs.

SOUTHERN CALIFORNIA EDISON COMPANY, et al.,
Defendants and Appellants.

~~SUPREME~~ COURT
# FILED

AUG − **6** 2007

Frederick K. Ohlrich Clerk

Deputy

## PLAINTIFF'S PETITION FOR REVIEW

Of the Opinion
of the Court of Appeals, Second Appellate District, Division Two

On Appeal from a Judgment based on a jury verdict
of the Superior Court of California, County of Los Angeles
Case No. BC294734
The Honorable Mel Red Recana, Judge

Brian D. Chase, Esq. (S.B.N. 164109)
**BISNAR|CHASE**
1301 Dove St., Suite 120
Newport Beach, CA 92660
949/752-2999
bchase@bisnarchase.com

## TABLE OF CONTENTS

ISSUES PRESENTED FOR REVIEW .......................... 4

STATEMENT WHY REVIEW SHOULD BE GRANTED .......... 5

STATEMENT REGARDING PETITION FOR REHEARING ...... 5

STATEMENT OF FACTS ................................... 9

ARGUMENT IN SUPPORT OF REVIEW ..................... 9

I.    THE COURT OF APPEAL'S DECISION TO ORDER NOT
      TO BE PUBLISHED AN OPINION SO DRAMATICALLY
      IN  CONFLICT  WITH  LONGSTANDING  *STARE
      DECISIS,*  ITSELF  AN  ARGUABLE  ABUSE  OF
      DISCRETION,   PLAINLY   FACILITATED   THE
      DISPARATE  AND  UNFAIR  CASE-SPECIFIC
      TREATMENT  OF  THE  MINOR  PLAINTIFF
      COMPARED  TO  OTHER  LITIGANTS,  ENSURED
      ABSENCE  OF  REVIEW  OR  JUDICIAL
      ACCOUNTABILITY,  AND  EXEMPLIFIES  THE
      NECESSITY  FOR  THIS  COURT  HEREIN  TO
      ENUNCIATE  GUIDELINES  MANDATING
      PUBLICATION OF SUCH DECISIONS TO SAFEGUARD
      THE INTEGRITY OF THE JUDICIAL PROCESS ........ 12

II.   THE COURT OF APPEAL IMPERMISSIBLY IGNORED
      THE  JURY'S  FINDINGS  OF  DISPUTED  FACT  AND
      IMPROPERLY DECIDED THOSE ISSUES IN ITS RUSH
      TO REVERSE THE JURY'S VERDICT IN THIS CASE .... 18

III.  THE  COURT  DEPRIVED  PLAINTIFF  OF  HIS
      CONSTITUTIONAL RIGHT TO A JURY TRIAL ON ALL
      ISSUES OF FACT .................................. 22

IV.   THE  COURT  REPUDIATED  THE  SPOLIATION  OF
      EVIDENCE REMEDY AUTHORIZED BY THIS COURT
      IN  LIEU  OF  A  CLAIM  FOR  INTENTIONAL
      SPOLIATION OF EVIDENCE. ........................ 22

V.   MS. MAGDALENO'S INTERACTION WITH CHILD
     RESIDENTS OF THE COMPANY TOWN IN THIS CASE
     CANNOT BE LIKENED, BY LAW, AS "SO INTENSELY
     PERSONAL" AND SO "UNUSUAL AND STARTLING,"
     TO SEXUAL ASSAULTS/ACTS OF ARSON SUCH THAT
     IT WOULD BE UNJUST TO IMPOSE LIABILITY. . . . . . . . 24

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

CERTIFICATION OF COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

# TABLE OF AUTHORITIES

Page

### *Cases*

*Alma W. v. Oakland Unified* (1981) 123 Cal.App.3d 133 . . . . . . . . . . . . . 24

*Bailey v. Filco* (1996) 48 Cal.App.4th 1552 . . . . . . . . . . . . . . . . . . . . . 26

*Baptist v. Robinson* (2006) 143 Cal.App.4th 151 . . . . . . . . . . . . . . . . . . 27

*Carr v Wm. C. Crowell Co.* (1946) 28 Cal.2d 652 . . . . . . . . . . . . . . . . . 21

*Cavinin v. Pac. Southwest Airlines* (1983) 148 Cal.App.3d 512 . . 14, 19, 22

*Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 13, 22, 23

*DeMirjian v. Ideal Heating Corp.* (1954) 129 Cal.App.2d 758 . . . . . . . . 21

*Ducey v. Argo Sales Co.* (1980) 25 Cal.3d 707 . . . . . . . . . . . . . . . . . . . 21

*Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992 . . . 24

*Fields v. Sanders* (1947) 29 Cal.2d 834 . . . . . . . . . . . . . . . . . . . . . . . . 21

*Hinman v. Westinghouse Elec. Co.* (1970) 2 Cal.3d 956 . . . . . . . . . . . . . . 3

*Hiroshima v. Pacific Gas & Elect. Co.* (1936) 18 Cal.App.2d 24 . . . . . . . 21

*Hoblitzell v City of Ione* (2003) 110 Cal.App.4th 675 . . . . . . . . . . . . . 26

*In re Estate of Beard* (1999) 71 Cal.App.4th 753 . . . . . . . . . . . . . . 3, 13, 21

*In re Cortez* (1971) 6 Cal.3d 78 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*John R. v. Oakland Unified School District* (1989) 48 Cal.3d 438 . . . 24, 26

*Kephart v. Genuity, Inc.* (2006) 136 Cal.App.4th 280 . . . . . . . . . . . . . . . 21

*Kim v. Euromotors West/The Auto Gallery*
          (2007) 184 Cal.App.4th 170 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Lisa M. v. Henry Mayo Newhall Memorial Hosp.* (1995)12 Cal.4th 29
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 24

*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202 . . . . . . . . . 14, 21, 24

*Olivia N. v. NBC* (1977) 74 Cal.App.3d 383 . . . . . . . . . . . . . . . . . 14, 19, 22

*Pacific Employers Ins. Co. vs. Industrial Acc. Com'n* (1945) 26 Cal.2d 286
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*People v Barnes* (1986) 42 Cal.3d 284 . . . . . . . . . . . . . . . . . . . . . . 13, 20

*People v. Surplice* (1962) 203 Cal.App.2d 784 . . . . . . . . . . . . . . . . . . . 17

*People v. Thornton* (1974) 11 Cal.3d 738 . . . . . . . . . . . . . . . . . . . . . 13, 20

*Perez v. Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 12, 13, 18, 19, 21, 27

*Pritchard v Gilbert* 1951) 107 Cal.App.2d 1 . . . . . . . . . . . . . . . . . . . . . 21

*Rodgers v. Kemper Constr. Co.* (1975) 50 Cal.App.3d 608, 619. . . . . . 3, 21

*Schmier v. Supreme Court* (2000) 78 Cal.App.4th 703 . . . . . . . . . . . . . . 18

*Thorn v. City of Glendale* (1994) 28 Cal.App.4th 1379 . . . . . . . . . . . . . 21

*United States v. Drummond* (8th Cir. 1990) 903 F.2d 1171, 1177 . . . . . . . 8

*Yamaguchi v. Harnsmut* (2003) 106 Cal.App.4th 472 . . . . . . . . . . . . . . . 21

## TABLE OF AUTHORITIES
(Continued)                                                <u>Page</u>

### *Statutes*

U.S. Const. 7th Am. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 22

Cal.Const.
     Art. I, § 16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 22

C.C.P.
     § 592 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 22

Evid.C.
     § 312 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 22

Gov't.C.
     § 68081 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

### *California Rules of Court*

     Rule 8.500(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6-9, 12, 15
     Rule 8.1105(c) . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 6, 9, 14, 17
     Rule 8.1115 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6, 15
     Rule 8.1120 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 17

### *Miscellaneous*

CACI 204 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 13, 23

Dunn, D., "Unreported Decisions in the United States Courts of Appeals," 63
Cornell L. Rev. 128, 142-43 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 15

Shuldberg, K., "Digital Influence: Technology and Unpublished Opinions in
the Federal Courts of Appeals," 85 Cal.L.Rev. 541 (March, 1977) . . . . . 16

Stienestra, D., "Unpublished Dispositions: Problems of Access and Use in the
Courts of Appeal," (Fed. Jud. Council 1985), 1985 WL 71570 . . . . . . 8, 15

Second Appellate District, Division Two No. B185778

# IN THE SUPREME COURT OF CALIFORNIA

JOSHUA HILD, etc.,
Plaintiff and Respondent,

vs.

SOUTHERN CALIFORNIA EDISON COMPANY, et al.,
Defendants and Appellants.

## PLAINTIFF'S PETITION FOR REVIEW

### TO THE HONORABLE CHIEF JUSTICE AND ASSOCIATE JUSTICES OF THE SUPREME COURT OF THE STATE OF CALIFORNIA:

Petitioner/Plaintiff JOSHUA HILD, a minor, hereby petitions the Court for review of the "unpublished" June 25, 2007 Opinion of the Second District of the Court of Appeal in this case (Appendix) which reversed the judgment on a jury verdict in his favor awarding him for compensation for the permanent loss of use of his right eye, the result of an accident caused by Defendant/Respondent SOUTHERN CALIFORNIA EDISON's employee, Katherine Magdaleno, while she was on duty, following a full and fair jury trial.

As set forth below, to achieve the dubious result explicated in its unpublished Opinion, the Court of Appeal was required to engage in a dramatic excursion from longstanding constitutional, statutory and common

1

law *stare decisis*, and further articulated harsh new law on the topic of *respondeat superior*, and on that basis the Court's Opinion should have been published under California Rules of Court ("C.R.C.") Rule 8.1105(c)(1, 3). By ordering "not to be published" that decision became unusable for any other purpose, other than the manifest injustice which resulted from that decision. Rule 8.1115(a). This, in turn, all but axiomatically disqualified that Opinion from Review by the Court for lack of the criteria specified by Rule 8.500(b).

In so doing, the Court of Appeals has raised the important, novel, and timely question herein of whether such purposeful use of "nonpublication" has plainly created a second "hidden body of law." (as many legal scholars below, have warned) directly enabling and facilitating the harsh and disparate treatment of litigants such as Mr. Hild, who further have no recourse by review, thus no judicial accountability lies. The issue ripe for overdue resolution presented herein focuses on the desperate need for adoption by this Court of guidelines for the appellate judiciary specifically mandating publication of any Opinions which would purport to depart so dramatically from existing precedent and/or which would create new law. The Opinion at issue exemplifies the dire need for such guidelines essential to safeguard the fundamental integrity of the judicial process and prevent unfair and disparate application of stare decisis to litigants such as Mr. Hild. This unsettled but fundamentally important issue of law itself qualifies for Review by this Court under Rule 8.500(b)(1).

Mr. Hild further asks this Court to supervise the Court of Appeal's misapplication of what is supposed to be the deferential "substantial evidence" standard of review. The lower court erroneously made its own findings of what it acknowledged are disputed facts. Since the Opinion should have been published, the underlying issue also raised and necessarily reviewed is whether the negligent conduct of Kathy Magdaleno which resulted in Joshua Hild's

2

blindness in his right eye was in the "scope of her employment" with SCE. After a contested four day trial focused on that issue of fact, the jury's verdict answered "YES" to the question of whether or not the conduct:

> in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business.[Citations.] In other words, where the question is one of vicarious liability, the inquiry should be whether the risk was one 'that may fairly be regarded as typical of or broadly incidental' to the enterprise undertaken by the employer.(*Perez v. Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962, citing *Rodgers v. Kemper Constr. Co.* (1975) 50 Cal.App.3d 608, 619.)

and answered "NO" to the question of whether Ms. Madgaleno had

> substantially deviated from his duties for personal purposes (*Hinman v. Westinghouse Elec. Co.* (1970) 2 Cal.3d 956, 960)

In pre-trial proceedings, the trial court denied SCE's Motion for Summary Judgment and/or Summary Adjudication on the *respondeat superior* issue[1]. Post-trial, the trial court, acting as a second jury — having heard and considered the same evidence as the jury — denied SCE's Motion for New Trial and Motion for Judgment Notwithstanding the Verdict which argued (for the third time) that the conduct was outside of Ms. Magdaleno's scope of employment as a matter of law. SCE then prosecuted the instant appeal.

In its Opinion, the appellate court acknowledged that the issue of scope of employment was a factual issue and that "The facts in this case are somewhat disputed" (*Opinion*, page 5). Despite this acknowledgment, the

---

[1] The same Division of the Second District Court of Appeal who heard the instant appeal summarily denied SCE's Petition for Writ of Mandate/Prohibition seeking to overturn that denial. (*Southern California Edison Company vs. Superior Court*, Case B175670)

court proceeded to re-weigh the evidence, to make its own determinations of the disputed facts (including the veracity of the witnesses and the weight accorded to their testimony), and then ruled that "As a matter of law, this connection cannot be made because Magdaleno was engaged in *purely personal conduct* that was *entirely unrelated to her employment* at the time Hild's injury occurred." (*Opinion*, page 7. Emphasis added.)

The Court of Appeal subsequently modified its Opinion on July 24, 2007 specifically to enable SCE to recover its costs below again Mr. Hild, who is still a child, which are expected to exceed tens of thousands of dollars.

This court should also accept review to provide the lower courts and litigants the guidance necessary to prevent a recurrence of the court's determination "as a matter of law" that Ms. Magdaleno's conduct was "purely personal" and "entirely unrelated to her employment", a determination inconsistent with the long established decisional law on *respondeat superior* in California.

## ISSUES PRESENTED FOR REVIEW

1.    Should this Court adopt a guideline requiring publication by Courts of Appeal of Opinions which would purport to depart so dramatically from existing precedent and/or which would create new law, in order to safeguard the fundamental integrity of the judicial process and to prevent inconsistent, unfair, and disparate application of Stare decisis to litigants such as Mr. Hild?

2.    Irrespective of the absence of such express guidelines, did the Court of Appeal abuse its discretion under C.R.C. Rule 8.1105(c) in any event, by ordering "not to be published" its opinion allowing its precedent shattering actions and decisions in this case to stand unreviewed and outside of the scrutiny of the legal community?

3.    To what extend can a court of appeal make findings of disputed

fact as a part of its reversal of a jury's verdict "as a matter of law"?

4.      As a matter of law in California, was Kathy Magdaleno's playful interaction with children from "Camp Edison" gone wrong "so intensely personal" and "so unusual and startling" so as to prevent Southern California Edison's *respondeat superior* liability in the manner of such intensely personal acts of gratification as student or patient sexual abuse and the emotional rush of the arsonist?

## STATEMENT WHY REVIEW SHOULD BE GRANTED

The Court is respectfully invited to review the lower court's stunning unpublished decision below. On its face, that unpublished decision admits to: (1) a profound, disturbing and inexplicable self-contradiction of the very standard of review set forth by the Court of Appeal; (2) a complete nullification and usurpation of the Constitutionally-secured right to a jury trial on what the Court of Appeal admitted were properly questions of fact, not questions of law: (3) a complete repudiation of any and all substantial evidence which supported the verdict; (4) a total nullification of the jury's proper role as the sole arbiter of the credibility of witnesses (as well as the weight to be accorded their testimony); (5) a complete rejection of this Court's direction in *Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, that SCE's intentional spoliation of critical evidence in the case below was the proper subject of appropriate inferences to be drawn by the jury in Mr. Hild's favor; and (6) a dramatic, unexplained extension of the factual circumstances under which *respondeat superior* may not be found as a matter of law, e.g., application of the rule in rape/sexual battery cases to disputed accidental injury cases.

Given these revolutionary new principles of constitutional, statutory and common law and appellate procedure advanced by the Court of Appeal in a single decision, so profoundly and irreconcilably in conflict with long-settled

5

*stare decisis* in this state, it is incomprehensible why the decision was not published. Indeed, under C.R.C. Rule 8.1105(c), a decision as groundbreaking in so many facets of law as that issued by the Court below plainly warrants publication. That follows because the opinion:

> (1)    Establishes a new rule of law, applies an existing rule of law to a set of facts significantly different from those stated in published opinions, or modifies, or criticizes with reasons given, an existing rule...." ***and***

> (3)    Involves a legal issue of continuing public interest. (C.R.C. Rule 8.1105(c))

Despite meeting these criteria, however, the decision was purposefully ordered "not to be published." As a result, of course, the opinion may never be cited in any other case (C.R.C. Rule 8.1115(a)) and thus will not constitute stare decisis. However, it is also no secret that as a consequence, Mr. Hild (a child who, through no fault of his own, first permanently lost the use of his right eye to SCE's employee's accident and then, as a result of the Court of Appeal's unpublished opinion, thereafter lost all compensation awarded by the jury for that loss) all but axiomatically cannot meet the stated criteria for review by this Court under C.R.C. Rule 8.500(b).

Obviously, given its dramatic departure in so many ways from so many well-settled rules of California law, had the opinion below been published, it clearly would have: (1) created a sudden and dramatic lack of uniformity in the decisions of the Appellate Courts of this State; and (2) would have created an important question of law quite badly needing to be "settled" by this Court, both of which are proper grounds for this Court's review and intervention under Rule 8.500(b)(1). Moreover, even if this Court were not to have granted review of such a "published" decision below, other District Courts of Appeal (and likely even Divisions within the Second District Court of Appeal) would

6

likely have questioned, and disapproved of, the questionable analyses and decisions employed by the Court of Appeal to reach its decision below, furnishing important guidance to other litigants in further cases (as well as raising grounds in those cases for future review by this Court).

Furthermore, Mr. Hild should not have been dutybound voluntarily to seek publication, pursuant to Rule 8.1120(a), of such an unpublished opinion so violative of so many well-settled legal rules and principles, solely to facilitate a discrete basis for review of that decision by this Court under Rule 8.500(b)(1). Such would obviously do a profound disservice to any and all present and future litigants similarly situated, as well as suddenly throw these numerous previously well-settled rules of law at issue into a morass of previously non-existent appellate conflicts, thus further clearly burdening the appellate judiciary at all levels. That Mr. Hild would logically neither desire nor voluntarily seek, under Rule 8.1120(a), publication of the actual decision issued below for these manifest reasons, would not likely be lost upon the Court of Appeal in electing in advance to order the Opinion "not to be published."

It is logical to assume that had the Court of Appeal below been *required* to publish its underlying decision, thereby opening up that opinion as citeable authority to close scrutiny by this Supreme Court as well as other Courts of Appeal, many of the dramatic and inexplicable departures therein from the settled rules of law and Constitutional principles at issue either would not have occurred at all, or some further, more satisfactory factual or legal justification would necessarily have been offered in support thereof.

More disturbingly, the use of the unpublished opinion below enabled the Court of Appeal to apply new, different, and controversial legal standards and in so doing, treat Mr. Hild more harshly and arbitrarily than other similarly situated litigants in the past and in the future. The potentially unfair and

unconstitutional, disparate treatment of litigants such as Mr. Hild occasioned by the use of unpublished opinions has been criticized by more than few jurists and legal scholars nationwide. *See, e.g., United States v. Drummond* (8th Cir. 1990) 903 F.2d 1171, 1177, fn. 2, Heaney, J. dissenting ("While unpublished opinions are not precedent, I am dismayed that we would give two similar petitioners different results in opinions that squarely conflict."); Stienestra, D., "Unpublished Dispositions: Problems of Access and Use in the Courts of Appeal," (Fed. Jud. Council 1985), 1985 WL 71570 [noting concern expressed during Congressional hearings in 1974-1975 over development of a "hidden body of law" generated by nonciteable unpublished opinions]; Dunn, D., "Unreported Decisions in the United States Courts of Appeals," 63 Cornell L. Rev. 128, 142-43 (1977) [noting that *stare decisis* is fundamental and '[t]o allow judicial sleight-of-hand to create a body of law exempt from the doctrine would assault a rudimentary underpinning of our legal system." *Id.*, at 145. Dunn further cites Justice Douglas, who said, "[T]here will be no equal justice under law if a...rule is applied in the morning but not in the afternoon. *Stare decisis* provides some moorings so that men may trade and arrange their affairs with confidence." *Id* ]

Mr. Hild submits that this Petition thus presents a crucial, novel question of law which goes to the very heart of the integrity, accountability and and fairness of the judicial process. That question is when a Court of Appeal **should publish an opinion** such as that rendered below, which proposes dramatically and/or profoundly to depart from controlling precedent and/or has created new rules of law (and would otherwise trigger the right to review under Rule 8.500(b)(1)), without requiring the aggrieved party to resort to a request for publication under Rule 8.1120(a) which would plainly be against his/her interest as well as that of the judiciary and public policy.

No California Supreme Court decision has yet addressed this issue.

Petitioner respectfully submits that this Court should grant review of this case pursuant to C.R.C. Rule 8.500(b)(1) to settle this important as yet unresolved question of law, and that this Court should adopt guidelines for the Courts of Appeal firmly requiring publication of Opinions they know will depart dramatically from existing precedent and/or create a new rule of law, and/or apply an existing rule to a set of facts significant different from those stated in published opinions (all grounds for publication under Rule 8.1105(c)(1)), without requiring aggrieved litigants to request to the disadvantage of themselves and others, that the Courts do so.

In adopting this rule, this Court would enunciate an important but currently absent self-executing safeguard dramatically enhancing consistency, accountability, integrity, fairness and the equal treatment of litigants in the appellate review process, as well as encourage the uniformity of stare decisis. Such a rule would thus avoid the creation of a secondary but unpublished set of legal principles selectively employed and applied in individual fact-specific cases.

This Court's guidance is further necessary to admonish inferior courts concerning the error of jury nullification despite the existence of substantial evidence which supports the jury's verdict.

Finally, this Court's guidance is needed to stem the expansion of the types of conduct which are arbitrarily found *as a matter of law* to be "purely personal conduct that was entirely unrelated to her employment."

## STATEMENT REGARDING PETITION FOR REHEARING

Plaintiff did not file a Petition for Rehearing in the Court of Appeal as there were no grounds therefor under Cal. Gov't.C. § 68081.

## STATEMENT OF FACTS

The underlying personal injury case arose out of an accidental discharge of a paint ball gun which injured then 13-year old Respondent Joshua Hild on

9

the afternoon of March 22, 2003 by Kathy Magdaleno, an employee of Southern California Edison, who was on duty for SCE at that time. [3 **R.T.** 142:9 to 143:6.] The incident occurred in Big Creek, a tiny SCE Company enclave located in the western slopes of the Sierra Nevada range approximately 90 miles east of Fresno. The incident rendered Mr. Hild (now 17 years old) permanently "legally blind" in his right eye. [3 **R.T.** 225-226.]

After several years of vigorous pretrial discovery and evidence limiting motions, and two separate visits to the Court of Appeal and higher, the case was tried to a jury starting on April 22, 2005, solely on the issues of whether Ms. Magdaleno had been within the scope of her employment at the time of the March 22, 2003 accident, and the nature and extent of Mr. Hild's damages. At trial, SCE stipulated that Ms. Magdaleno was acting in the course of her employment when a paintball gun she was holding discharged, its paint ball hitting Mr. Hild in the right eye [4 **R.T.** 286:16-17]. SCE admitted that Ms. Magdaleno was negligent in doing so. [4 **R.T.** 286:22-26]

Both sides presented their evidence on the relation between Ms. Magdaleno's interaction with the enclave's children who were playing paintball and her employment with SCE. SCE presented extensive evidence

Both sides presented their evidence on the relation between Ms. Accident Prevention Manual [1 **A.A.** 34-35], and the oral testimony of Andrew McMillan (Ms. Magdaleno's Supervisor at the time of the incident) [4 **R.T.** 287 - 305], Rick Alan Johnson (long time Supervisor of Operations and Maintenance at Big Creek) [4. **R.T.** 342-361], Thomas McPheeters (Division Manager for the Northern Hydro Division of SCE) [4 **R.T.** 361-380], and a video tape and photographs of the Big Creek area [discussed in testimony at 4 **R.T.** 444-451]. SCE has pointed to no ruling by the trial court which fettered its counsel's choices on what evidence to present to the jury on this issue. At the close of evidence both sides argued the evidence, including

10

SCE's trial counsel's vigorous attack on the veracity and professionalism of Mr. Hild's attorneys, his attack on the evidence presented by Mr. Hild on the business purpose for the "company town" environment SCE created in Big Creek, his argument that there was a lack of foreseeability of residents playing paint ball in and around all SCE facilities at Big Creek, and his argument in support of what he argued was the only logical determination by the jury: that Ms. Magdaleno's conduct was a total deviation from Ms. Magdaleno's job duties and SCE's business when she interacted with the children playing paintball.

The case was submitted to the jury on April 27, 2006. [4 **R.T.** 473.] After its evaluation of all of the substantial evidence presented at trial, the jury found that Ms. Magdaleno's conduct was within the scope of her employment at the time of the injury, thus finding SCE liable for her conduct and liable for Mr. Hild's damages in the sum of $704,633.00. [1 **R.A.** 1-3.]

After the trial court denied its Motion for New Trial and Motion for Judgment Notwithstanding the Verdict [1 **A.A.** 49], SCE appealed, raising the questions of whether: (1) it was error to give a wilful suppression/spoliation of evidence instruction (CACI 204) concerning SCE's spoliation, in violation of its document retention policies, of an original handwritten account of the accident prepared by Ms. Magdaleno at her supervisor's instruction, in favor of a typewritten, embellished and editorialized version of that statement instead prepared by her supervisor; (2) the jury's verdict on the scope of employment issue was supported by substantial evidence; and (3) whether the trial court's curative instruction, asked for and approved by SCE's trial counsel, was sufficient to counter the effect, if any, of what SCE alleges was Mr. Hild's counsel's improper argument.

The Court of Appeal reversed the judgment. Rejecting the jury's (and the trial court's) evaluation of the evidence and the jury's determination of the

11

issues of fact, the Court held that, *as a matter of law*, Ms. Magdaleno's conduct was so personal and so deviated from her employment that SCE was not liable for the damages resulting from the injury Mr. Hild suffered as a result of that conduct.

## ARGUMENT IN SUPPORT OF REVIEW

I.    **THE COURT OF APPEAL'S DECISION TO ORDER NOT TO BE PUBLISHED AN OPINION SO DRAMATICALLY IN CONFLICT WITH LONGSTANDING *STARE DECISIS*, ITSELF AN ARGUABLE ABUSE OF DISCRETION, PLAINLY FACILITATED THE DISPARATE AND UNFAIR CASE-SPECIFIC TREATMENT OF THE MINOR PLAINTIFF COMPARED TO OTHER LITIGANTS, ENSURED ABSENCE OF REVIEW OR JUDICIAL ACCOUNTABILITY, AND EXEMPLIFIES THE NECESSITY FOR THIS COURT HEREIN TO ENUNCIATE GUIDELINES MANDATING PUBLICATION OF SUCH DECISIONS TO SAFEGUARD THE INTEGRITY OF THE JUDICIAL PROCESS.**

Review is sought under Rule 8.500(b)(1), to address the important and novel question of law of whether an intermediate appellate court which has elected to issue an opinion dramatically and/or profoundly departing from controlling precedent and/or creating new rules of law may insulate that Opinion from any scrutiny, accountability and/or review by ordering it not to be published. On its face, the Opinion below dramatically and inexplicably departed profoundly from numerous longstanding, well-settled legal and constitutional principles. These are addressed in more detail below, but include:

•    The Court admittedly violated the very standard of review it cited under *Perez v. Van Groningen, etc* (1986) 41 Cal.3d 962, admitting

factual issues existed precluding adjudication of scope of employment as a question of law, then did impermissibly so anyway contrary to *Perez, supra.* (Slip Opin. at 5)

- The Court repudiated the jury's actual factfinding in Mr. Hild's favor, disregarded substantial evidence it relied upon supporting the verdict, and instead selectively chose and reweighed the evidence in SCE's favor in order to reverse the judgment for Mr. Hild, contrary to law prohibiting Courts of Appeal from "substitut[ing] [their] own inferences or deductions" for those of the jury. *People v. Barnes* (1986) 42 Cal.3d 284, 303; *People v. Thornton* (1974) 11 Cal.3d 738, 754; *In re Estate of Beard* (1999) 71 Cal.App.4th 753, 779.

- The Court totally repudiated this Court's seminal ruling in *Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 12, authorizing trial courts to adapt and impose jury instructions on willful suppression of evidence to remedy parties' acts of spoliation of important evidence prejudicial to their opponents (as merely one alternative to recognizing an independent tort cause of action for intentional spoliation of evidence). The Court of Appeal disregarded inferences the jury obviously properly drew against SCE under CACI 204 following SCE's spoliation of the very first handwritten and most critical handwritten account of the incident personally drafted by Ms. Magdaleno, SCE's coverup of that fact in false discovery responses, and the repeated impeachment of Mr. McMillan at trial on the issue. In superimposing its personal belief in SCE's witnesses' credibility over these conflicting adverse inferences arising from the spoliation, the Court of Appeal repudiated the primary remedy this Court expressly intended be available to Plaintiff in lieu of a cause of action for intentional spoliation of evidence.

- By totally disregarding all conflicting factual evidence and

13

inferences adverse to SCE subscribed to by the jury, and instead reversing the jury's determination based on its own selection of other evidence favorable to SCE, the Court of Appeal usurped the jury's function and nullified altogether the jury's factfinding on these disputed factual questions, violating Plaintiff's constitutionally-guaranteed right to a jury trial on these factual issues. Cal.Const. Art. 1, § 16; U.S. Const. 7th Am.; C.C.P. § 592; Evid.C. § 312; *Cavinin v. Pac. Southwest Airlines* (1983) 148 Cal.App.3d 512, 531; *Olivia N. v. NBC* (1977) 74 Cal.App.3d 383, 389.

- The Court of Appeal's opinion also dramatically broke new ground holding that, regardless of the conflicting evidence, this disputed admittedly unintentional accident is indistinguishable as a matter of law from rape/sexual battery-intentional tort cases in that no amount of disputed facts will bring ever the case within an employer's scope of employment, *citing Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 219.

- The Court asserted that the scores of cases cited by Petitioner holding the issue of scope of employment to be a question of fact in a myriad of factually comparable employer-employee accident cases, quipping "[a]ll of the cases are distinguishable." (Slip Opin. at p. 10) However, the Court of Appeal thereafter only addressed a single case cited by Petitioner, and conspicuously offered no explanation whatsoever as to how or why the scores of other cases cited by Petitioner which plainly conflict with its decision, were or are "distinguishable." (Slip Opin. at p. 10, fn. 2)

. Given these revolutionary new principles of constitutional, statutory and common law and appellate procedure advanced by the Court of Appeal in a single decision. so profoundly and irreconcilably conflicted with long-settled *stare decisis* in this state, it is incomprehensible why the decision was not published. Under Rule 8.1105(c)(1,3), the opinion clearly should have been published. By purposefully not publishing it, however, the Court of Appeal

14

precluded its use as stare decisis, C.R.C. Rule 8.1115(a), which in turn all but ensured the criteria for review by this Court under Rule 8.500(b)(1) could not be met.

However, this conspicuously unpublished decision resulted in Mr. Hild, a minor child, permanently losing both the use of his right eye as well as all compensation for that loss, based on the Court's adoption of an entirely new set of legal constitutional, statutory, and common law principles to the facts treating him very differently (and far more prejudicially) than all other similarly-situated litigants in such cases.[2] The breathtaking (but highly legally dubious) extent of the Court of Appeal's departure from stare decisis and its harsh repudiation of the jury's sole function as factfinder, in order to reach its decision depriving a child of compensation for the permanent loss of his right eye though no fault of his own, strongly suggests that use Opinion below (in what would otherwise, if published, have constituted an important landmark departure from precedent) was purposefully ordered not published to insulate that decision from any further scrutiny for the reasons discussed above.

These actions have plainly created a second "hidden body of law," (as many commentators have warned) enabling and facilitating the harsh and prejudicial disparate treatment of litigants such as Mr. Hild, who further have no recourse by review, thus no judicial accountability lies, as a direct result of that nonpublication decision. Nor is it reasonable for litigants to seek voluntary publication of such abhorrent and poorly-reasoned decisions which would prejudice many other litigants, throw the entire area of law into disarray,

---

[2]    This has been one principal concern advanced over the consequences of a rule of noncitation. *Drummond, supra,* 903 F.2d at 1177, fn. 2, Heaney, J. dissenting; ("While unpublished opinions are not precedent, I am dismayed that we would give two similar petitioners different results in opinions that squarely conflict."); Stienestra, D.. "Unpublished Dispositions, *supra*: 1985 WL 71570; Dunn, D., *supra*, 63 Cornell L. Rev. at 144.

and foist considerable further burden on the appellate judiciary.

This Court will recall that in 1996 it took comments on the proposed modification of then C.R.C. Rule 977, to prevent citation of any unpublished opinions (whether ordered not to be published or not) for any purpose (except in litigant specific cases), which amendment was thereafter adopted. At that time, it is fair to say this Court's major concerns were logistical and workload related, and many legal scholars critical of the rule of noncitation were principally concerned with "access" to those decisions. Ten years later, all litigants have electronic access to every appellate decision in California, published and unpublished. In his excellent law Comment published in March, 1997, Kurt Shuldberg points out that dramatic advancements in electronic technology have largely mollified many of these logistical concerns supporting the rule of noncitation. *See*, "Digital Influence: Technology and Unpublished Opinions in the Federal Courts of Appeals," 85 Cal.L.Rev. 541 (March, 1977).

What this case now highlights ten years later is no longer a logistical problem, but instead a very disturbing strategic and highly prejudicial utilization of the "nonpublication" attribute specifically to facilitate a case-specific outcome with rules and reasoning entirely inconsistent with standing precedent, and further ensuring totally insulation from any review, critique, or accountability by the very act of deeming the opinion nonpublished.

As a result, and even without further guidance sought from this Court herein on when opinions become so revolutionary on so many important points of law that public policy mandates their publication to ensure judicial consistency and accountability, Petitioner submits that the Court of Appeals clearly abused its discretion specifically ordering the nonpublication of its opinion. "The term (judicial discretion) implies absence of arbitrary determination, capricious disposition or whimsical thinking. It imports the exercise of discriminating judgment within the bounds of reason....To exercise

16

the power of judicial discretion all the material facts in evidence must be both known and considered, together also with the legal principles essential to an informed, intelligent and just decision." *In re Cortez* (1971) 6 Cal.3d 78, 85-86, quoting *People v. Surplice* (1962) 203 Cal.App.2d 784, 791. Where a court has discretion, and fails to exercise that discretion, it is an abuse of that court's discretion. *Kim v. Euromotors West/The Auto Gallery* (2007) 184 Cal.App.4th 170, 177.

Here, the court of appeal had the discretion to publish its opinion. The content of the opinion clearly meets the standards for publication, and indeed would have constituted groundbreaking new law at odds with settled stare decisis on numerous constitutional and other legal principles. The order "not to publish" the Opinion appears not merely arbitrary, capricious, or whimsical, but purposefully intended to insulate the outcome of this specific case from being questioned or disturbed.[3]

As noted above, Petitioner submits that this Court should grant review and enunciate desperately needed guidelines mandating publication of Appellate Decisions which profoundly, dramatically depart from existing precedent and/or create a new rule of law, and/or apply an existing rule to a set of facts significant different from those stated in published opinions (all grounds for publication under Rule 8.1105(c)(1)), without requiring aggrieved litigants to resort to a request for publication under Rule 8.1120(a) which

---

[3]    It is also noteworthy that during oral argument, none of the Appellate panel members posed even a single question to counsel for Mr. Hild, nor gave any indication whatsoever of their intentions reflected in the unpublished Opinion. Given the panel's dramatic departure from standing law, and intention to deprive a minor child of all compensation for the permanent loss of his right eye, it is inexplicable why none of the appellate justices would have at least raised even one of these issues with Mr. Hild's counsel at the hearing to afford him the opportunity to discuss and deliberate the Court's pronouncements on these pivotal legal issues so adversely damagingly impacting his minor client.

17

would plainly be against his/her interest as well as that of the judiciary and public policy. "[T]he Supreme Court — California's highest court — is the appropriate body to establish policy for determining those Court of Appeal opinions entitled to the precedential value of the stare decisis doctrine." *Schmier v. Supreme Court* (2000) 78 Cal.App.4th 703, 710.

In adopting this rule, this Court will enunciate an important but currently absent self-executing safeguard dramatically enhancing consistency, accountability, integrity, fairness and the equal treatment of litigants in the appellate review process, as well as encourage the uniformity of stare decisis, and avoid the creation of a secondary but unpublished set of legal principles selectively employed and applied in individual fact-specific cases.

## II. THE COURT OF APPEAL IMPERMISSIBLY IGNORED THE JURY'S FINDINGS OF DISPUTED FACT AND IMPROPERLY DECIDED THOSE ISSUES IN ITS RUSH TO REVERSE THE JURY'S VERDICT IN THIS CASE

The importance of enunciating guidelines mandating publication to safeguard the integrity of the judicial process can be easily gleaned by the numerous, inexplicable legal errors and abuses of discretion engaged in by the Court of Appeal which, had the Opinion been required to be published, arguably would never have occurred to begin with. The most glaring of these surrounds the complete nullification and usurpation of the jury's sole factfinding role. The lower court's opinion states the standard of review in this matter as:

> "The issue of scope of employment is generally a question of fact of the jury to determine. (*Perez v Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962, 968.) However, when the facts are undisputed and no conflicting inferences are possible, then the issue may be decided by the court as a question of law."

18

(*Kephart v. Genuity, Inc* (2006) 136 Cal.App.4th 280, 289.) [¶]

**The facts in this case are somewhat disputed**. (*Opinion*, page

5. [emphasis supplied])

The Court then impermissibly proceeded to decide the issue as a question of

law anyway, disregarding any and all evidence which supported the jury's

verdict as well as this Court's direction in *Perez, supra*. (Slip Opin. at 5). The

Court made several determinations of fact on its own in its review of this case

and, as a result, nullified the resolution of those disputes by the jury which

heard all of the evidence. The Court also reached its own "determinations of

fact" which serve the basis for its decision, as a matter of law, that SCE is not

vicariously liable for the injury to Mr. Hild. Key among the court of appeal's

own resolution of disputed fact are:

•     The lower court judged the veracity of Kathy Magdaleno as a witness,

choosing to disbelieve her trial testimony as being inconsistent with written

statements attributed to her.[4] (*Opinion*, pgs. 5, 7-8.) Deciding the credibility

of a witness, or lack of credibility of other witnesses, is a solely the province

of the jury sitting as the trier of fact. C.C.P. § 592; Evid.C. § 312; *Cavinin v.

Pac. Southwest Airlines* (1983) 148 Cal.App.3d 512, 531; *Olivia N. v. NBC*

(1977) 74 Cal.App.3d 383, 389

---

[4]     The authenticity of the written documents which were identified at trial
by SCE as being statements of Kathy Magdaleno was a hotly contested issue
at trial, and one of the extensively briefed issues in the Court of Appeal. The
court of appeal ignored that dispute, unilaterally deciding to treat the purported
documents as authentic despite Ms. Magdaleno's supervisor's admitted
spoliation of one handwritten statement and the pawning off of another
handwritten document as Ms. Magdaleno's own statement by SCE in
discovery. These contested written documents are those which the court of
appeal finds to be more accurate and persuasive than Ms. Magdaleno's
deposition and trial testimony, which the court cited in its statement that "At
trial, Magdaleno contradicted all of her previous oral and signed, written
statements." (*Opinion*, pg. 4.)

19

- "Magdaleno, by contrast, had absolutely no reason to engage in childish pranks involving paintball guns outside her employer's facility" (*Opinion*, pg 9). Much evidence was submitted by both sides on this issue. The jury was presented with Mr. Hild's evidence about the reason for Ms. Magdaleno's interaction with the children, and SCE presented its evidence of why there was no business purpose for that interaction. The jury exercised its function and determined this conflict of evidence in Mr. Hild's favor. The Court of Appeal demonstrated no lawful or legitimate basis upon which to nullify that determination.

- "The incident occurred on publicly owned land that anyone could have used for a paintball game." (*Opinion*, pg. 9.) There was a substantial amount of evidence presented by both parties on the proximity of events to the physical site of SCE installations — if one must require a G.P.S. basis for "proximity" and "employer premises"— let alone the existence of the company town, the remote location, and an enclave mostly cut off from the interference of the outside world which exists in Big Creek. The Court of Appeal decided to disregard Mr. Hild's evidence, and to accept only SCE's evidence in holding, as a matter of law, that the conduct was removed from SCE's business premises.

- "SCE derived no benefit from Magdaleno's participation in a children's game of paintball when she was supposed to be inside the water treatment plant, testing the quality of the water." (*Opinion*, pg.11.)

Such post-trial reliance upon only certain selected evidence, and reweighing of the evidence by the Court of Appeal is clearly forbidden by well-settled law. *People v Barnes, supra*, 42 Cal.3d at 303; *People v. Thornton*, 11 Cal.3d at

20

754; *Estate of Beard, supra,* 71 Cal.App.4th at 779.[5]  Indeed, California's courts have long stood by the role of the jury in deciding contested issues of fact in *respondeat superior* cases.[6]

---

[5]/    Amazingly, the Court misstated the evidence asserting "[e]very witness in this case testified that Magdaleno was playing a practical joke or prank on Hild" when this was simply not true. Ms. Magdaleno herself (outside the environment of executing non-spoliated statements actually written by her employer for her signature), her supervisor, Andrew MacMillan, and his supervisor, Jeffery McPheeters, all testified that they understood the shooting was not a "prank" but an accident ("the gun just went off,") and the jury elected as the trier of fact to believe that testimony, despite conflicting testimony from other witnesses.  At page 8, fn 1 of the Opinion, the Court of Appeal admitted "[a]t trial, Magdaleon disclaimed any intent to shoot Hild," failing to explain how the jury was not entitled to believe this candid, unrehearsed trial testimony instead of the numerous self-serving "canned" statements SCE itself prepared and forced Ms. Magdaleno to sign under obvious implied duress of termination.

[6]/    See, e.g., *Carr v. Wm. C. Crowell Co.* (1946) 28 Cal.2d 652 — reversal of directed verdict in favor of employer - issue of fact for the jury to determine; *Fields v. Sanders* (1947) 29 Cal.2d 834 — affirm jury's verdict for injured driver; *Hiroshima v. Pacific Gas & Elect. Co.* (1936) 18 Cal.App.2d 24 — affirm jury verdict for plaintiff; *Pritchard v. Gilbert* 1951) 107 Cal.App.2d 1 — affirm court judgment in favor of plaintiff; *DeMirjian v. Ideal Heating Corp.* (1954) 129 Cal.App.2d 758 — reversal of directed verdict - issue of fact for the jury; *Rodgers v. Kemper Construction Co., supra* — affirm jury's verdict in favor of injured person; *Ducey v. Argo Sales Co.* (1980) 25 Cal.3d 707 — affirm jury's verdict in favor of employer; *Perez v. Van Groningen & Sons, Inc, supra,* — the Supreme Court reversed jury verdict in favor of employer, but the Court refused to authorize a jury instruction that the employee's conduct was in the scope of employment since that is an issue of fact for the jury; *Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202 — reversal of court of appeal's judgment reversing the jury's verdict finding the City's *respondeat superior* liability for the rape of a detainee by an on-duty police officer; *Yamaguchi v. Harnsmut* (2003) 106 Cal.App.4th 472 — reverse jury's verdict in favor of injured person because of trial court's erroneous instruction that employer was liable as a matter of law for employee who threw hot oil at a police officer - issue of fact for jury to determine; *Kephart v. Genuity, Inc , supra* — affirm jury's verdict in favor of employer in disputed case of mixture of personal and business related conduct in "road rage"

The Opinion on its face demonstrates that the Court of Appeal failed follow this Court's superior, controlling authorities directly on point, and violated the very standard of review it quoted. This Court must advise the courts of the state to avoid this subversion of the substantial evidence rule and this direct challenge to the important role the jury holds in our jurisprudence.

## III. THE COURT DEPRIVED PLAINTIFF OF HIS CONSTITUTIONAL RIGHT TO A JURY TRIAL ON ALL ISSUES OF FACT

Plaintiff had the right to a trial by jury on all disputed issues of fact. Cal.Const. Art. I, § 16; U.S. Const. 7th Am.; C.C.P. § 592; Evid.C. § 312; *Cavinin v. Pac Southwest Airlines* (1983) 148 Cal.App.3d 512, 531; *Olivia N. v. NBC* (1977) 74 Cal.App.3d 383, 389. By totally disregarding all conflicting factual evidence and inferences adverse to SCE, subscribed to by the jury, and instead reversing the jury's determination based on its own selection of other evidence favorable to SCE, the Court of Appeal usurped the jury's function, nullified its factfinding, and clearly usurped Plaintiff's constitutionally-guaranteed right to a jury trial on these factual issues.

## IV. THE COURT REPUDIATED THE SPOLIATION OF EVIDENCE REMEDY AUTHORIZED BY THIS COURT IN LIEU OF A CLAIM FOR INTENTIONAL SPOLIATION OF EVIDENCE.

In *Cedars-Sinai Medical Center v Superior Court* (1998) 18 Cal.4th 1, 12, this Court specifically authorized trial courts to adapt and impose jury instructions on willful suppression of evidence to SCE's intentional spoliation of critical evidence, i.e., the original Madgaleno handwritten account of how the accident genuinely transpired, and instead replaced it with a self-serving doctored typewritten version of that statement he created, editorially inserting

---

incident when employee was driving to airport to take plane at the start of a business trip.

22

the gratuitous and argumentative words "horseplay" and others never originally used by Magdelano. This prevented Plaintiffs from ever ascertaining the original contents of that critical handwritten statement. SCE subsequently concealed the fact of its spoliation in false, sworn discovery responses. McMillan was badly impeached on these issues during his trial testimony. The trial court properly gave CACI 204 in response, and the jury obviously and properly drew appropriate inferences against SCE and in Plaintiff's favor on the scope of employment issue. *Cedars, supra*, 14 Cal.4th at 12. Again usurping the issue of witness credibility and inferences from the jury, the Court of Appeal quipped "*we* fail to see the significance...Magdaleno did not deny she read and signed the statement typed by McMillan..." (Slip Opin. at 8, fn. 1) In other words, the Court of Appeal openly declared its intent to superimpose its belief of SCE's witnesses over the conflicting adverse inferences properly raised by its wrongful spoliation of critical evidence, which spoliation inferences properly drawn under *Cedars* the Court of Appeal unilaterally and retroactively declared were to be disregarded. Aside from once again dramatically changing the standing rule of law prohibiting appellate court's weighing of conflicts or disputes in the evidence and substituting its own inferences or deductions for those of the jury, the Court of Appeal also repudiated one of the primary remedies this Court expressly made available to Plaintiff in *Cedars-Sinai* in lieu of a cause of action for intentional spoliation of evidence.

23

## V.    MS. MAGDALENO'S INTERACTION WITH CHILD RESIDENTS OF THE COMPANY TOWN IN THIS CASE CANNOT BE LIKENED, BY LAW, AS "SO INTENSELY PERSONAL" AND SO "UNUSUAL AND STARTLING," TO SEXUAL ASSAULTS/ ACTS OF ARSON SUCH THAT IT WOULD BE UNJUST TO IMPOSE LIABILITY.

"Considering, as we may, the propensities and tendencies of mankind and the ordinary habits of life, it must be admitted that wherever human beings congregate, either at work or at play, there is some frolicking and horseplay." *Pacific Employers Ins. Co. vs. Industrial Acc. Com'n* (1945) 26 Cal.2d 286, 294.

There has been a course of judicial intrusion into the murky lake of *respondeat superior* to accomplish what appears to be an effort to bring "clarity" and "guidance" to the issue. The most easily observed trend is the line of rulings which hold that illegal conduct grounded in a person's desire for sexual gratification by stealth or artifice or the exercise of positional authority [*Alma W. v. Oakland Unified* (1981) 123 Cal.App.3d 133, *John R. v. Oakland Unified School District* (1989) 48 Cal.3d 438, *Lisa M. v. Henry Mayo Newhall Memorial Hosp.* (1995) 12 Cal.4th 29, and *Farmers Ins. Group v. County of Santa Clara* (1995) 11 Cal.4th 992][7] and the deviant emotional satisfaction of an arsonist [*Thorn v. City of Glendale* (1994) 28 Cal.App.4th 1379] are, for

---

[7] It is instructive to the instant Petition that one recent case which seems to fall outside of this mold is *Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202. Much has been made that the Supreme Court "wrongly decided" *Mary M.*. Mr. Hild submits, however, that the Court gave proper deference to the jury's decision on the contested issues of fact which were presented in the trial, and appropriately refused to reverse those determinations. Despite the vigorous dissents of Justice Kennard in *Farmers* [11 Cal.4th at 1038-1048] and *Lisa M.* [12 Cal.4th at 308-314], this Court has consistently held since *Mary M.* that this conduct, *as a matter of law*, cannot be the basis for *respondeat superior* liability.

24

public policy reasons, felt to be "so intensely personal" that there would be no circumstances under which it would be just to hold an employer responsible for the consequences of that conduct, no matter how "foreseeable" that conduct might be.

The appellate court's opinion in this case adds "on-duty playful interaction with children of the company town" to that list.

No policy reason is stated to support this conclusion. No primary or secondary sources are cited where courts of this state (or other states) have made this determination. There is no citation to studies defining this behavior as deviant or dangerous. There are no criminal statutes which evidence society's decision to outlaw this behavior. This Court needs to provide guidance to the courts and litigants of the state to establish the special circumstances under which the list of conduct which is so intensely personal so as to prevent *respondeat superior* liability is expanded. The conduct of Kathy Magdaleno in this case is not that kind of conduct.

The harm which resulted from the appellate court's decision to determine for itself contested issues of fact is best demonstrated in its determination, as a matter of law, that Ms. Magdaleno's interaction with children of Big Creek was "entirely unrelated to her employment." (*Opinion*, p.7.) California law has held that "scope of employment" should be broadly interpreted to protect third party victims. There is a sliding scale of conduct measured in the range from "fully and completely" in the employer's interests or under the employer's direction, to "entirely unrelated to her employment". It normally is the province of the jury to determine where the at-issue conduct falls in this range. The court of appeal in this case held that, as a matter of law, the at-issue conduct was beyond the "no liability" marker at the top of the scale.

The concept of "relatedness" between the employee's conduct with the

25

employer's business enterprise is often captured in the word "foreseeability". That term has been defined, for *respondeat superior* purposes, as:

> "Foreseeability" in this context must be distinguished from foreseeability as a test for negligence. "In the latter sense 'foreseeable' means a level of probability which would lead a prudent person to take effective precautions, whereas 'foreseeability' as a test for *respondeat superior* merely means that in the context of the particular enterprise an employee's conduct is no so *unusual or startling* that it would seen unfair to include the loss resulting from it among other costs of the employer's business." [Citations omitted.] "Accordingly, the employer's liability extends beyond his actual or possible control of the employee to include risks inherent in or created by the enterprise. [Citation omitted.] (*John R.. supra*, 48 Cal.3d at 463, Kaufman, J. dissenting. Original emphasis)

The jury in this case decided that Ms. Magdaleno's conduct was not unusual or startling to her employer. The court of appeal disagreed, vacating that decision as a matter of law. This case does not present undisputed facts of the total removal of several miles from the business premises without any evidence of a business related purpose which the employee's car trip to the cookie store was found, as a matter of law, to be unrelated to the employer's business in *Bailey v. Filco* (1996) 48 Cal.App.4th 1552. This is not the building inspector and law enforcement officer who were acting outside their employer's jurisdiction, outside of official duties, and for personal reasons which was the conduct the trial court and court of appeal agreed was unrelated to the employer's business in *Hoblitzell v. City of Ione* (2003) 110 Cal.App.4th 675. Nor is this the kind of case where the employer's only alleged involvement was the employee's unauthorized use of the employer winery's

26

agricultural bin to transport a load of grapes for his own wine making business was found to be conduct unrelated to his employer's business. (*Baptist v. Robinson* (2006) 143 Cal.App.4th 151.)

Here, the appellate court sought to narrow the scope of the law's view of this relationship to SCE's production of power and the job duties of Kathy Magdaleno in particular. It decided to narrow the scope of the premises on which SCE conducts its business at Big Creek. It impermissibly dismissed and disregarded the extensive evidence presented by Mr. Hild at trial of the broader business purpose pursued by SCE in its creation and support of the company town environment of Big Creek, where people "Live where you work and work where you live", evidence which may have been the very basis for the jury's determination of the necessary "foreseeability." At a minimum, this case presents an employee's combination of personal interest with the employer's business. However, the lower court chose to disregard the Supreme Court's guidance found in this Court's decision in *Perez* holding that "[w]here the employee is combining his own business with that of his employer, or attending to both at substantially the same time, no nice inquiry will be made as to which business he was actually engaged in at the time of injury, unless it clearly appears that neither directly or indirectly could he have been serving his employer." [*Citations omitted.*] Here, as we have noted, Garcia was clearly performing an assigned task of the employer by disking the orchard, an act in furtherance of his employment. The presence of an unauthorized passenger was insufficient to take Garcia outside the scope of his employment since he was still carrying out his employer's business.[*Citation omitted* ] (*Perez v Van Groningen & Sons, Inc.*, *supra*, 41 Cal.3d at 970.)

This Court, in its supervisory role, should grant review to enable it to instruct the courts and litigants of the state that a determination of this issue as a matter of law should be the exception, not the rule.

## CONCLUSION

For all of the foregoing reasons, Petitioner Joshua Hild respectfully submits that this Petition should be GRANTED as prayed.

Respectfully submitted,

BISNAR|CHASE

Dated: August 3, 2007

_____
BRIAN D. CHASE
Attorney for Plaintiff/Respondent
JOSHUA HILD

## CERTIFICATION OF COUNSEL

I certify, based upon a use of a word processing program's word counting tool, that the body of this Petition contains approximately 8,398 words.

Dated: August 3, 2007

_____
BRIAN D. CHASE
Attorney for Plaintiff/Respondent
JOSHUA HILD

28

## PROOF OF SERVICE BY OVERNIGHT EXPRESS

STATE OF CALIFORNIA, COUNTY OF ORANGE

I am a resident of and employed in the aforesaid county, State of California; I am over the age of eighteen years and not a party to the within action; my business address is 1301 Dove St., Suite 120, Newport Beach, California.

On August 3, 2007 I served the foregoing **PLAINTIFF'S PETITION FOR REVIEW** on the interested parties in this action by delivering a true and correct copy thereof to the following parties, by overnight express, next business day delivery guaranteed.

Donald Zell, Esq., Robert E. Suttle, Esq.
Law Offices of Donald Zell
837 N. Ross St., 2nd Floor, Santa Ana, CA 92701

Michael Gonzales, Esq., Donald A. Redd, Esq.
Southern California Edison Co.
2244 Walnut Grove Avenue, Suite 331 Rosemead. CA 91770

Robin Meadow, Esq., Tillman J. Breckenridge, Esq.
**GREINES, MARTIN, STEIN & RICHLAND, LLP**
5700 Wilshire Blvd., Suite 375, Los Angeles, CA 90036-3697
[all attorneys for Southern California Edison]

Clerk, Los Angeles County Superior Court
(for transmission to Judge Recana)
111 N. Hill St., Los Angeles, CA 90012-3014

Clerk, Court of Appeals for the State of California
Second Appellate District, Division Two
300 S. Spring St., Floor 2, Los Angeles. CA 90013-1213

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: August _3_ , 2007

SCOTT RAPHAEL

29

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| JOSHUA HILD, | B185778 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC294734) |
| v. | COURT OF APPEAL - SECOND DI... **F I L E D** |
| SOUTHERN CALIFORNIA EDISON COMPANY, | JUN 2 5 2007 |
| Defendant and Appellant. | JOSEPH A. LANE                Clerk |
| | _____ Deputy Cle~ |

APPEAL from a judgment of the Superior Court of Los Angeles County. Mel Recana, Judge. Reversed.

Law Offices of Don H. Zell, Don H. Zell, Robert E. Suttle; Michael Gonzales, Donald A. Redd; Greines, Martin, Stein & Richland, Robin Meadow, Tillman J. Breckenridge for Defendant and Appellant.

Bisnar & Chase, Brian D. Chase, Jerry N. Gans for Plaintiff and Respondent.

_____

A power company employee shot a teenager in the eye with a paintball gun. A jury found the company liable for the boy's injuries under the doctrine of respondeat superior. On appeal, the power company argues that it is not vicariously liable, as a matter of law, because its employee was acting outside the scope of her employment when the incident occurred. We agree with appellant. The evidence undisputedly shows that the employee was participating in a prank or joke with children playing near her work site. The prank had nothing to do with her job duties. As a result, the employee's tortious acts did not fall within the scope of her employment and her employer cannot be held liable for them. We reverse the judgment.

## FACTS

Kathy Magdaleno was a water systems operator employed by Southern California Edison (SCE). Her duty was to maintain the drinking water and wastewater treatment plants at Big Creek. She also maintained an SCE trout farm, to satisfy Department of Fish and Game requirements. Big Creek is a small community in the Sierras comprised of SCE employees and their families. SCE operates power generating stations at a chain of lakes in the area. The power and water treatment plants are on federally owned public land that is licensed to SCE. Anyone can recreate there.

On March 22, 2003, Magdaleno embarked on her usual duty of maintaining Big Creek's domestic water treatment plant, to test water quality and wash filters, as needed. She performed this duty three times per day. It was stipulated that Magdaleno was in the course of her employment when the accident occurred.

After arriving in her company truck at the treatment plant, Magdaleno sat down on the tailgate to smoke a cigarette. She heard children playing nearby. Two boys Magdaleno knew from Big Creek emerged from the brush. They exchanged pleasantries with Magdaleno, and indicated that they were being beaten at their paintball game by some older children. Magdaleno asked one of the boys, Jacob Smith, if she could examine his paintball gun. The safety was on when Smith handed her the gun. He showed her how to remove the safety. Paintball games were a popular recreational activity in Big Creek.

2

Magdaleno inquired whether Joshua Hild was up the hill. Hild, the 14-year-old son of an SCE employee, was a close friend of Magdaleno's family. Jacob Smith testified that Magdaleno said, "Call Josh down. I want to shoot him." Smith felt uneasy, but complied with her request. Smith's companion, Michael Gilfoy, likewise heard Magdaleno say that she wanted to shoot Hild as a prank. Magdaleno testified that her intent was to bring Hild down the hill and say to him, "Ha-ha, here you are out in the open." Both eyewitnesses testified that Magdaleno hid the gun behind a waist-high wall in front of her.

Magdaleno coaxed Hild to approach her by saying that she had a message from his mom. Hild motioned to indicate that he was removing himself from the paintball game, and took off his protective face mask. When Hild came into range, witnesses Smith and Gilfoy saw Magdaleno bring the gun up from behind the wall, and fire several shots at Hild. Magdaleno testified that she did not recall the gun going off.

One of the paintball projectiles struck Hild in the right eye. Afterward, Magdaleno was apologetic, and told Hild that she was "just messing around" or playing a joke on him. As a result of the shooting, Hild suffered a torn retina and eye inflammation. He lost most of his visual acuity, peripheral vision, and depth perception, and is legally blind in his right eye. His condition is permanent and irreversible. Eventually, he may become completely blind in that eye.

Magdaleno drove Hild home, then reported the shooting to her supervisor, Andrew McMillan. Distraught, Magdaleno told McMillan that she intended to shoot Hild with a paintball gun, but "I didn't mean to shoot him in the eye." McMillan instructed her to draft a handwritten statement describing the incident. McMillan later typed up Magdaleno's handwritten statement. The typewritten document was entitled "Horseplay Incident" (a title added by McMillan) and stated that Magdaleno fully intended to shoot Hild, though not in the face. McMillan testified that he did not make any substantive changes to Magdaleno's handwritten statement, only grammatical and spelling corrections. Magdaleno read the typewritten statement and signed it without making changes. A few days later, Magdaleno was interviewed by two people from SCE's

3

claims department. They drafted a second statement that included the words "I intended to shoot Josh, but didn't intend to hurt him." Magdaleno read the statement before signing it. Magdaleno told a different supervisor at Big Creek that she fired the gun but did not intend to shoot Hild in the head.

At trial, Magdaleno contradicted all of her previous oral and signed, written statements. She denied any intent to shoot Hild, characterizing the event as "a case of bad judgment. . . . I obviously did not know how to operate that paintball gun properly." She was holding the gun at her waist and did not realize that it had fired until Hild said he was shot in the eye. Magdaleno's original handwritten statement regarding the incident was thrown away.

Magdaleno conceded that her job duties at SCE do not include interacting with children. She was not performing her duties as a water treatment operator when the incident occurred, because paintball and other recreational activities have nothing to do with SCE's business enterprise. The company's business is to provide electricity to customers in Southern California.

SCE company rules prohibit employees from putting themselves in a position in which their personal interests conflicted with SCE's interests, or which might interfere with an employee's ability to perform his or her job as well as possible. Employees must act "with due regard for the health and safety of other employees and the public." In addition, SCE prohibits employees from engaging in horseplay or practical jokes, a rule that was discussed annually with Magdaleno. Magdaleno informed her supervisor that she had violated the horseplay rule by getting involved with children outside the water plant on March 22, 2003.

SCE supervisor McMillan testified that it was not a violation of SCE policy for Magdaleno to have a simple conversation with children at the job site, or to look at a paintball gun. Another supervisor at Big Creek testified that SCE would not approve of an employee firing a paintball gun while on duty. It was not part of Magdaleno's duties to talk to people, play with children, or engage in paintball fights. An SCE employee who engaged in paintball while on duty would be subject to corrective action.

4

Hild, through his guardian ad litem, sued SCE and Magdaleno for negligence, assault and battery. The claims against Magdaleno were dismissed before trial. Trial was by jury. By a margin of nine to three, the jury found that Magdaleno was acting within the scope of her employment when she harmed Hild. The panel awarded Hild $704,633. Judgment was entered on May 24, 2005.

SCE moved to set aside the judgment and for a new trial. The court denied the motion. Appeal is taken from the judgment and from the order denying SCE's motion for a new trial.

## DISCUSSION

### 1. Appeal And Review

Appeal is taken from the judgment. (Code Civ. Proc., § 904.1, subd. (a)(1).) The primary issue on appeal is whether Magdaleno was acting within the scope of her employment. "The issue of scope of employment is generally a question of fact for the jury to determine. (*Perez v. Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962, 968.) However, when the facts are undisputed and no conflicting inferences are possible, then the issue may be decided by the court as a question of law." (*Kephart v. Genuity, Inc.* (2006) 136 Cal.App.4th 280, 289.)

The facts in this case are somewhat disputed. Magdaleno testified that she did not intend to shoot Hild, whereas every other witness (including the two eyewitnesses and numerous SCE managers) testified that Magdaleno announced her intent to shoot Hild, though not in the face. Regardless of the conflict in the testimony, SCE argues that Magdaleno was outside the scope of her duties when she shot Hild, whether intentionally or accidentally.

### 2. Magdaleno Was Not Acting Within The Scope Of Her Employment

#### a  *Legal Principles Relating To Respondeat Superior*

"The rule of respondeat superior is familiar and simply stated: an employer is vicariously liable for the torts of its employees committed within the scope of the employment." (*Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 296 (*Lisa M.*).) An employer "will not be held liable for an assault or other

intentional tort that did not have a causal nexus to the employee's work." (*Id.* at p. 297.)
"The nexus required for respondeat superior liability--that the tort be engendered by or
arise from the work--is to be distinguished from 'but for' causation. [Footnote.] That the
employment brought tortfeasor and victim together in time and place is not enough." (*Id.*
at p. 298.) The required nexus is "the same for intentional and negligent torts." (*Ibid.*)

   In various cases, the Supreme Court has said that "the incident leading to injury
must be an 'outgrowth' of the employment"; that the risk of injury must be """"inherent in
the working environment""""; or that it is """"typical of or broadly incidental to the
enterprise [the employer] has undertaken."""" (*Lisa M., supra,* 12 Cal.4th at p. 298, citing
*Carr v. Wm. C. Crowell Co.* (1946) 28 Cal.2d 652, 656-657, and *Hinman v
Westinghouse Elec Co* (1970) 2 Cal.3d 956, 960. See also *Farmers Ins. Group v.
County of Santa Clara* (1995) 11 Cal.4th 992, 1003 (*Farmers*).) Otherwise stated, the
courts ask "whether the tort was, in a general way, foreseeable from the employee's
duties. Respondeat superior liability should apply only to the types of injuries that "'as a
practical matter are sure to occur in the conduct of the employer's enterprise.""""
(*Lisa M., supra,* 12 Cal.4th at p. 299.) Foreseeability "'merely means that in the context
of the particular enterprise an employee's conduct is not so unusual or startling that it
would seem unfair to include the loss resulting from it among other costs of the
employer's business.'" (*Ibid.*)

   In *Lisa M.,* a male ultrasound imaging technician sexually molested a female
patient during a medical examination. The Supreme Court concluded that the defendant
hospital was not vicariously liable for the technician's misconduct under the doctrine of
respondeat superior. (12 Cal.4th at p. 294.) The court agreed that the injurious event was
causally related to the technician's employment: it would not have occurred but for his
employment, which gave him the opportunity to meet and be alone with the plaintiff.
Despite the existence of "but for" causation, the court determined that the sexual battery
was not "engendered by," an "outgrowth" of, "'typical of or broadly incidental to,'" or "a
general foreseeable consequence of" the hospital's enterprise. (*Id.* at pp. 299-300.) The
assault was not motivated or triggered by anything in the employment activity (*id.* at

6

p. 301), nor was it a generally foreseeable consequence of the technician's authorized physical contact with a patient. (*Id.* at pp. 302-303.)

The requirement of a nexus between an injury and the employment applies equally to accidental misconduct by an employee. In *Bailey v. Filco, Inc,* (1996) 48 Cal.App.4th 1552, an employee injured a third party during a paid break from work, while driving to buy cookies for herself and a coworker. (*Id.* at p. 1557.) The court concluded that a personal cookie run while on break is not typical of or broadly incidental to her duties as a cashier at Filco's electronics and appliance business. (*Id.* at p. 1564-1565.)

Respondeat superior liability does not attach if the employee does something entirely personal at his workplace. In *Defino v. Agilent Technologies, Inc.* (2006) 145 Cal.App.4th 790, an employee sent threatening email messages from his work computer. The use of the employer's computer system to send hate messages was not part of his employment duties or an outgrowth of his job. Making cyber threats was a substantial deviation from the employee's duties, even if the employee was "present at the workplace and may have been performing regular employment functions before or after transmitting one or more of the threatening messages." (*Id.* at p. 813.) Thus, if there is a departure from job duties for personal reasons while at the workplace, and even if the employee is present upon and using company property for his personal endeavor, no vicarious liability attaches.

### b   *Application To This Case*

To impose liability, a fact finder would have to conclude that there is a nexus between Magdaleno's tortious act and SCE's business enterprise, and that her conduct was foreseeable from her duties. As a matter of law, this connection cannot be made because Magdaleno was engaged in purely personal conduct that was entirely unrelated to her employment at the time Hild's injury occurred.

Every witness in this case testified that Magdaleno was playing a practical joke or prank on Hild when the incident occurred. Eyewitnesses Smith and Gilfoy testified that before the shooting, Magdaleno said she wanted to shoot Hild as a prank. Hild testified that immediately after the shooting, Magdaleno told him that she was "messing around"

and playing a joke on him with the paintball gun. Magdaleno read and signed two written statements admitting to engaging in tomfoolery.[1]  At trial, Magdaleno contradicted every other witness and her own signed statements; however, she admitted that she was playing a joke of some kind by bringing Hild down the hill so that she could say to him, "Ha-ha, here you are out in the open," i.e., where he could be easily shot with a paintball.

SCE could not reasonably foresee that Magdaleno would be distracted by children playing paintball instead of entering the water treatment plant where her duties lay, or that she would attempt to insinuate herself into the children's game by picking up a paintball gun and calling one of the children out from his hiding spot and into the open. Certainly, this series of acts is as unforeseeable as an employee going on an errand during a break and causing a traffic accident, as in the *Filco* case.

Regardless of whether the gun discharged accidentally (per Magdaleno) or intentionally (per the eyewitnesses), Magdaleno was undisputedly playing a prank. There is no conceivable support for a claim that playing pranks on third parties during work hours, outside the work premises, is "inherent in the work environment" of a water treatment plant, or is "typical of or broadly incidental to" SCE's enterprise of generating electrical power. (See *Lisa M., supra,* 12 Cal.4th at p. 298.) Mishandling a paintball gun and shooting a child in the face--accidentally or intentionally--is not the type of injury that is "'''sure to occur in the conduct of the employer's enterprise.'''" (*Id* at p. 299.) At

---

[1]      Hild attaches great importance to McMillan's disposal of Magdaleno's handwritten statement describing the shooting. We fail to see the significance. Magdaleno did not deny that she read and signed the statement typed by McMillan, nor did she deny that she read and signed the document drafted by SCE claims administrators a few days later, both of which indicate that she intended to shoot Hild. At trial, Magdaleno disclaimed any intent to shoot Hild. The outcome of this appeal does not hinge on whether the shooting was intentional or accidental. Magdaleno did not testify that her original statement proved that she was carrying out her duties for SCE at the time of the shooting, which is the only dispositive question that concerns us.

most, Magdaleno's employment brought her together with Hild in time and place, but that "is not enough" to impose vicarious liability on SCE. (*Id.* at p. 298.)

The employment link between Magdaleno and the paintball-playing children is far more remote than the link between the technician and his patient in *Lisa M.,* in which the Supreme Court found no vicarious liability. The tortfeasor and victim in *Lisa M* did, at least, have a reason to make physical contact in a hospital examining room, though the contact devolved into impermissible acts of molestation. Magdaleno, by contrast, had absolutely no reason to engage in childish pranks involving paintball guns outside her employer's facility.

Even the most generous reading of the law does not permit the conclusion that playing with children and handling paintball guns were "acts *necessary* to the comfort, convenience, health, and welfare of the employee while at work." (*Farmers, supra,* 11 Cal.4th at p. 1004, italics added.) Rather, ""it clearly appears that neither directly nor indirectly could [the employee] have been serving his employer"" at the time of the injury. (*Ibid.*) There is simply no nexus between Hild's injury and Magdaleno's employment. Magdaleno was "engaged in purely personal activity" when the injury occurred. (*Le Elder v. Rice* (1994) 21 Cal.App.4th 1604, 1609.)

Hild argues that Magdaleno's conduct "was broadly incidental to Edison's enterprise" and was not "unusual or startling" because Big Creek is a company town where families know each other and SCE encourages good working relationships and mutual aid. Hild points out that no SCE rules were violated when Magdaleno greeted the children, looked at the paintball gun, or called out to Hild to exchange pleasantries with him.

It makes no difference that Magdaleno was acquainted with Hild and the children from Big Creek: the incident occurred on publicly owned land that anyone could have used for a paintball game. The misconduct does not fall within the scope of her employment merely because Magdaleno engaged in a prank with acquaintances rather than strangers. Though paintball was a popular recreational activity in Big Creek, no evidence was presented at trial that there were any prior incidences of SCE employees

playing paintball while on duty, or that SCE would tolerate such activity by employees who were supposed to be working. On the contrary, the testimony showed that any employee caught doing so would be subject to disciplinary action. The absence of a rule violation by Magdaleno does not mean that any of her acts fell within the scope of her employment as a water systems operator or were related in any way to SCE's enterprise. Nothing in the record suggests that Magdaleno's encounter with Hild was the culmination of a series of acts authorized by SCE. (See *Mary M v. City of Los Angeles* (1991) 54 Cal.3d 202, 219 [police officer who acted within the scope of his employment by detaining a woman for erratic driving misused his authority as a law enforcement officer when he drove her home and raped her. The rape was committed in the course of a series of acts authorized by the employer].)

Hild offers a laundry list of cases in which vicarious liability was imposed. In each case the injury was closely linked to the tortfeasor's employment. Hild's own descriptions demonstrate the nexus. Apart from the *Mary M.* case, Hild lists *Carr v. Wm C Crowell Co, supra*, 28 Cal.2d 652 (construction worker throws a hammer at his job site "during dispute over construction procedures"); *Fields v. Sanders* (1947) 29 Cal.2d 834 (employee truck driver assaults another driver "during a dispute about the employee's driving"); *Hiroshima v. Pacific Gas & Elec. Co.* (1936) 18 Cal.App.2d 24 (employee attacks a customer who "was upset about the employee's collection methods"); *Pritchard v. Gilbert* (1951) 107 Cal.App.2d 1 (salesman returning from a sales meeting attacks another person returning from the same meeting over a driving dispute); and *Perez v Van Groningen & Sons, Inc., supra,* 41 Cal.3d 962 (employee performing assigned job of disking an orchard injures a passenger on his tractor who should not have been riding with the employee). Hild's list continues, but in each case the injury-employment nexus is easily discernible. All of the cases are distinguishable.[2]

---

[2]    Hild relies heavily on *Sunderland v. Lockheed Martin Aeronautical Systems Support Co.* (2005) 130 Cal.App.4th 1, which, he suggests, somehow changes the law on

Finally, the public policy factors underlying the doctrine of respondeat superior do not support the imposition of vicarious liability. These are: "(1) to prevent recurrence of the tortious conduct; (2) to give greater assurance of compensation for the victim; and (3) to ensure that the victim's losses will be equitably borne by those who benefit from the enterprise that gave rise to the injury." (*Farmers, supra,* 11 Cal.4th at p. 1013.) The three factors are not legal standards, but they provide guidance to the courts in considering whether to impose vicarious liability on an employer. (*Lisa M., supra,* 12 Cal.4th at p. 304.)

The danger of severe personal injury and potential of ruinous civil liability already provides a powerful deterrent to the type of conduct that occurred here: most people have enough common sense and good judgment to know they should not mishandle a weapon that could maim any unprotected person in the vicinity. (See *Kephart v. Genuity, Inc , supra,* 136 Cal.App.4th at p. 297 [after an employee forced another car off the road in a road rage incident, court deemed this aberrant behavior that the majority of motorists do not engage in, so there was no deterrent effect in imposing liability on the employer].) While imposing liability on SCE would provide Hild with a deep pocket to assure his recovery, the purpose of respondeat superior liability is "to provide greater assurance of compensation to victim in circumstances where it is equitable to shift losses to the employer because the employer benefits from the injury-producing activity and such losses are, as a practical matter, sure to occur from the conduct of the enterprise." (*Ibid.*) SCE derived no benefit from Magdaleno's participation in a children's game of paintball when she was supposed to be inside the water treatment plant, testing the quality of the water. Due to the complete absence of a link between Hild's injury and SCE's business, it would not be equitable to shift the loss to the employer.

## 3. Reversible Error

---

respondeat superior. *Sunderland* does not change the law on respondeat superior. And, in any event, we follow Supreme Court authority like *Lisa M.*, rather than rules promulgated by other divisions. (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455.)

11

A judgment may be set aside if, after an examination of the whole record, the court is convinced that an error has resulted in a miscarriage of justice, was prejudicial, and that a different result would be probable if no error had occurred. (Cal. Const., art. VI, § 13; Code Civ. Proc., § 475; *Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 802.) We have examined the entire record and applicable law. It is clear that the evidence does not support the imposition of respondeat superior liability in this case, in light of the controlling legal principles. The trial court's denial of SCE's motion for judgment n.o.v. was reversible error.

**4. Other Issues Raised**

In light of our conclusion, we need not reach the remaining issues raised by appellant in its brief.

## DISPOSITION

The judgment is reversed. Appellant may recover its costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

BOREN, P.J.

We concur:

ASHMANN-GERST, J.

CHAVEZ, J.

12

John Paul Bisnar
Bisnar & Chase LLP
1301 Dove Street
Suite 120
Newport Beach, CA  92660


Division 2
Joshua Hild
vs
Southern California Edison
B185778

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for
publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication
or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

COURT OF APPEAL - SECOND DIST.

F I L E D

JUL 2 4 2007

JOSEPH A. LANE                    Clerk

_____  Deputy Clerk

| | |
|---|---|
| JOSHUA HILD,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>SOUTHERN CALIFORNIA EDISON<br>COMPANY,<br><br>    Defendant and Appellant. | B185778<br><br>(Los Angeles County<br>Super. Ct. No. BC294734)<br><br>**ORDER MODIFYING OPINION**<br><br>[No Change in Judgment] |

The COURT:

    The opinion filed herein on June 25 2007, is ordered modified as follows:

Page 12, Disposition, insert the following sentence between the two sentences:  The trial

court is directed to enter judgment in favor of appellant Southern California Edison

Company.

The Disposition now reads in its entirety:

    The judgment is reversed.  The trial court is directed to enter judgment in favor of

    appellant Southern California Edison Company.  Appellant may recover its costs

    on appeal.

    This modification does not effect a change in judgment.