Supreme Court Case No. S155161
2d Civil No. B185778

IN THE SUPREME COURT OF CALIFORNIA

JOSHUA HILD, et al.

    Plaintiffs and Respondents,

vs.

SOUTHERN CALIFORNIA EDISON COMPANY, et al.

    Defendants and Appellants.

---

Appeal From The Superior Court of Los Angeles County
Honorable Mel Recana
Los Angeles County Superior Court Case No. BC 294734

---

## ANSWER TO PETITION FOR REVIEW

---

**LAW OFFICES OF DON H. ZELL**
  Don H. Zell, SBN 51876
  Robert E. Suttle, SBN 46030
837 North Ross Street
Santa Ana, California 92701
(714) 480-0064 // Fax (714) 480-0118

Michael Gonzales, SBN 115681
Douglas P. Ditonto, SBN 115790
2244 Walnut Grove Avenue, Suite 331
Rosemead, California 91770
(626) 302-6975 // Fax (626) 302-6997

**GREINES, MARTIN, STEIN & RICHLAND LLP**
Robin Meadow, SBN 51126
Marc J. Poster, SBN 48493
5700 Wilshire Boulevard, Suite 375
Los Angeles, California 90036-3626
(310) 859-7811 // Fax (310) 276-5261

Attorneys for Defendant and Appellant
**SOUTHERN CALIFORNIA EDISON COMPANY**

Supreme Court Case No. S155161
2d Civil No. B185778

IN THE SUPREME COURT OF CALIFORNIA

JOSHUA HILD, et al.

    Plaintiffs and Respondents,

vs.

SOUTHERN CALIFORNIA EDISON COMPANY, et al.

    Defendants and Appellants.

---

Appeal From The Superior Court of Los Angeles County
Honorable Mel Recana
Los Angeles County Superior Court Case No. BC 294734

---

## ANSWER TO PETITION FOR REVIEW

---

**LAW OFFICES OF DON H. ZELL**
  Don H. Zell, SBN 51876
  Robert E. Suttle, SBN 46030
837 North Ross Street
Santa Ana, California 92701
(714) 480-0064 // Fax (714) 480-0118

Michael Gonzales, SBN 115681
Douglas P. Ditonto, SBN 115790
2244 Walnut Grove Avenue, Suite 331
Rosemead, California 91770
(626) 302-6975 // Fax (626) 302-6997

**GREINES, MARTIN, STEIN & RICHLAND LLP**
Robin Meadow, SBN 51126
Marc J. Poster, SBN 48493
5700 Wilshire Boulevard, Suite 375
Los Angeles, California 90036-3626
(310) 859-7811 // Fax (310) 276-5261

Attorneys for Defendant and Appellant
**SOUTHERN CALIFORNIA EDISON COMPANY**

# TABLE OF CONTENTS

                                                         **Page**

INTRODUCTION   1

THE FACTS   2

THE COURT OF APPEAL'S DECISION   4

WHY REVIEW SHOULD BE DENIED   6

I.   THE COURT OF APPEAL APPLIED WELL-ESTABLISHED LEGAL PRINCIPLES TO THE UNIQUE FACTS OF THE CASE.   6

II.   THE COURT OF APPEAL DID NOT REWEIGH THE EVIDENCE.   8

III.   NONPUBLICATION IS A NONISSUE.   8

CONCLUSION   11

CERTIFICATE OF COMPLIANCE   12

# TABLE OF AUTHORITIES

| Cases | Page |
|---|---|
| Bailey v. Filco, Inc.<br>(1996) 48 Cal.App.4th 1552 | 6 |
| Defino v. Agilent Technologies, Inc.<br>(2006) 145 Cal.App.4th 790 | 6, 7 |
| Farmers Ins. Group v. County of Santa Clara<br>(1995) 11 Cal.4th 992 | 4 |
| In re Marriage of Christie<br>(1994) 28 Cal.App.4th 849 | 9 |
| James B. Beam Distilling Co. v. Georgia<br>(1991) 501 U.S. 529 [111 S.Ct. 2439, 115 L.Ed.2d 481] | 9 |
| Jones v. Wagner<br>(2001) 90 Cal.App.4th 466 | 9 |
| Lisa M. v. Henry Mayo Newhall Memorial Hospital<br>(1995) 12 Cal.4th 291 | 4 |
| People v. Davis<br>(1905) 147 Cal. 346 | 7 |
| Perez v. Van Groningen & Sons, Inc.<br>(1986) 41 Cal.3d 962 | 4 |
| Schmier v. Supreme Court<br>(2000) 78 Cal.App.4th 703 | 9 |

## INTRODUCTION

The Court of Appeal's decision is not, as plaintiff Joshua Hild feverishly asserts, a "stunning," "revolutionary," and "profound" departure from established law. The result is in fact compelled by well-settled Supreme Court precedent which holds that an employer is not vicariously liable for the conduct of an employee who engages in unforeseen and purely personal activities unconnected to the employer's enterprise.

Here, defendant Southern California Edison's employee, a water systems operator, stepped away from her work and got involved with some neighborhood kids who were playing paintball in hillside brush. She borrowed one of their paintball guns, and, in the course of playing a prank on one of the kids – the plaintiff – accidentally shot him in the eye. Although the result of the employee's prank is undeniably tragic, the Court of Appeal quite correctly concluded that, on these facts and under well-settled law, plaintiff failed to make out a case for vicarious liability for his injuries against Edison.

Plaintiff's other points are equally unmeritorious. Contrary to plaintiff's assertion, the Court of Appeal did not reweigh the evidence. The Court expressly disregarded any conflicts in the evidence and decided the vicarious liability issue as a matter of law on the undisputed material facts.

Plaintiff's point about nonpublication of the Court of Appeal's decision is unfathomable. In almost the same breath, he argues (1) the decision is so important that the Court of Appeal should have published it even without his asking (which he didn't), and (2) the decision is so terrible that it should not be on the books at all. It can't be both.

In fact, it's neither. The opinion is correct, and it was not published simply because it does not meet the standards for publication under

1

## TABLE OF AUTHORITIES (Continued)

| Rules | Page |
|---|---|
| California Rules of Court, rules: | |
| 8.500 | 7 |
| 8.500(b)(1) | 2 |
| 8.500(c)(2) | 2 |
| 8.1105 | 2, 9 |
| 8.1120 | 9 |

California Rules of Court, rule 8.1105, as recently revised. This case is of no interest to anyone but the parties.

Plaintiff apparently believes that if he complains loudly enough about how some people perceive unpublished decisions as getting short shrift, the Court will grant review just to prove him wrong. But his complaint is unfounded. Unpublished decisions don't get short shrift, and review is in fact granted in unpublished cases that merit review. Furthermore, by failing to request publication or otherwise object when the Court of Appeal did not certify the decision for publication, plaintiff has not properly preserved a constitutional challenge to the publication process. In any event, that challenge already has been roundly rejected by the courts.

Plaintiff's petition presents no issue even vaguely resembling a ground for review under California Rules of Court, rule 8.500(b)(1), that is, "to secure uniformity of decision or to settle an important question of law." Review should be denied.

## THE FACTS

Plaintiff claims the Court of Appeal's decision skews the facts. (Pet., pp. 18-22.) That isn't so, which is probably why he offers not a single record reference to support that claim. Moreover, plaintiff did not petition for rehearing in the Court of Appeal, so, under California Rules of Court, rule 8.500(c)(2), the Court of Appeal's statement of facts must be accepted as true. In summary, those facts are:

Edison operates power generating stations at a chain of lakes in the Big Creek area of the Sierras. Big Creek is a small community of Edison employees and their families. (June 25, 2007 Slip Opinion, p. 2.)

Edison employed Kathy Magdaleno as a water systems operator. Her job was to maintain the drinking water and wastewater treatment plants at Big Creek and to maintain an Edison trout farm. The facilities are on

2

federally owned public land licensed to Edison. The land is open to the public for recreation. (*Id.*)

On March 22, 2003, Magdaleno embarked to test water quality and wash filters at Big Creek's domestic water treatment plant. After arriving in her company truck at the plant, she sat down on the tailgate to smoke a cigarette. She heard children playing nearby. Two boys she knew from Big Creek emerged from the brush. They said they were being beaten at their paintball game by some older boys. Magdaleno asked one of the boys if she could examine his paintball gun. The boy handed her the gun and showed her how to disarm the safety. (*Id.*)

Magdaleno inquired whether plaintiff Joshua Hild, a 14-year-old friend of Magdaleno's family, was up the hill. She intended to bring plaintiff down the hill and say to him, "Ha-ha, here you are out in the open." (Slip Opinion, p. 3.) She coaxed plaintiff to approach her by saying that she had a message from his mom. Plaintiff motioned to indicate that he was removing himself from the paintball game, and took off his protective face mask. (*Id.*)

Magdaleno's paintball gun fired, and a paintball hit plaintiff in the eye. (*Id.*) At trial, Magdaleno denied any intent to shoot plaintiff, characterizing the event as "a case of bad judgment. . . . I obviously did not know how to operate that paintball gun properly." (Slip Opinion, p. 4.)

Magdaleno's job duties at Edison did not include interacting with children or anyone other than Edison employees. She was not performing her duties as a water treatment operator when the incident occurred. Paintball games or other recreational activities have nothing to do with Edison's business enterprise of providing electricity to customers in Southern California. (*Id.*)

3

## THE COURT OF APPEAL'S DECISION

The Court of Appeal's decision notes that although the facts were somewhat disputed as to whether Magdaleno shot plaintiff intentionally or accidentally, that dispute does not matter to the outcome of the appeal. The issue on appeal is whether, "[r]egardless of the conflict in the testimony, . . . Magdaleno was outside the scope of her duties when she shot Hild, whether intentionally or accidentally." (Slip Opinion, p. 5.)[1]

The decision then extensively reviews the general rules established by this Court for determining whether an employer should be vicariously liable for torts committed by an employee. (Slip Opinion, pp. 5-6, citing and quoting from, among others, *Lisa M. v. Henry Mayo Newhall Memorial Hospital* (1995) 12 Cal.4th 291, 298, *Farmers Ins Group v. County of Santa Clara* (1995) 11 Cal.4th 992, 1005, and *Perez v. Van Groningen & Sons, Inc.* (1986) 41 Cal.3d 962, 968.) The decision concisely and accurately summarizes those rules as follows:

> "To impose liability, a fact finder would have to conclude that there is a nexus between Magdaleno's tortious act and SCE's business enterprise, and that her conduct was foreseeable from her duties." (Slip Opinion, p. 7.)

---

[1] In response to plaintiff's complaint about the alleged spoliation of evidence of Magdaleno's original handwritten description of the incident, the Court of Appeal again emphasized that it was not making factual determinations about this or any other extraneous matter: "The outcome of this appeal does not hinge on whether the shooting was intentional or accidental. Magdaleno did not testify that her original statement proved that she was carrying out her duties for Edison at the time of the shooting, which is the only dispositive question that concerns us." (Slip Opinion, p. 8, fn. 1.)

4

On the basis of these established legal principles, the decision concludes, as a matter of law on undisputed facts, that when Magdaleno shot plaintiff, she was acting outside the scope of her duties:

> "SCE could not reasonably foresee that Magdaleno would be distracted by children playing paintball instead of entering the water treatment plant where her duties lay, or that she would attempt to insinuate herself into the children's game by picking up a paintball gun and calling one of the children out from his hiding spot and into the open." (Slip Opinion, p. 8.)

The decision reiterates that this result is compelled whichever version of the incident is believed:

> "Regardless of whether the gun discharged accidentally (per Magdaleno) or intentionally (per the eyewitnesses), Magdaleno was undisputedly playing a prank. There is no conceivable support for a claim that playing pranks on third parties during work hours, outside the work premises, is 'inherent in the work environment' of a water treatment plant, or is 'typical of or broadly incidental to' SCE's enterprise of generating electrical power. (See *Lisa M., supra,* 12 Cal.4th at p. 298.) Mishandling a paintball gun and shooting a child in the face – accidentally or intentionally – is not the type of injury that is ""'sure to occur in the conduct of the employer's enterprise.'"" (*Id.* at p. 299.)" (Slip Opinion, p. 8.)

The Court therefore reversed the judgment with directions to enter judgment in Edison's favor. (See July 24, 2007 Order Modifying Opinion.)

5

# WHY REVIEW SHOULD BE DENIED

## I.

## THE COURT OF APPEAL APPLIED WELL-ESTABLISHED LEGAL PRINCIPLES TO THE UNIQUE FACTS OF THE CASE.

Though the petition is awash in hyperbole and outrage, it all ultimately boils down to an argument that the Court of Appeal misapplied existing law to the particular facts of this case.

Edison submits that, for the reasons stated in the Court of Appeal's decision and under well-settled law, the Court of Appeal was absolutely right. There was no nexus between Magdaleno's paintball escapade and Edison's business enterprise, and her conduct was not reasonably foreseeable from her duties as a water systems operator.

Contrary to plaintiff's argument (Pet., p. 5.), an employee's conduct does not have to amount to sexual assault or arson before it can be deemed outside the scope of employment. (E.g., *Bailey v. Filco, Inc.* (1996) 48 Cal.App.4th 1552, 1564-1566 [employee's personal excursion to purchase cookies while on break not typical of or broadly incidental to duties as cashier]; *Defino v. Agilent Technologies, Inc.* (2006) 145 Cal.App.4th 790, 813 [employee's use of the employer's computer system to send hate messages not part of his employment duties or an outgrowth of his job].)

And, contrary to plaintiff's argument, vicarious liability is not invariably a question of fact. "[W]hen the material facts are undisputed and no conflicting inferences are possible, as here, the question becomes one of law for our independent consideration." (*Bailey v. Filco, Inc., supra,*

6

48 Cal.App.4th at p. 1558; see p. 1557 ["We conclude, as a matter of law, that (the employee) committed the alleged tort outside the scope of her employment"]; see *Defino v. Agilent Technologies, Inc.*, *supra*, 145 Cal.App.4th at p. 813 [affirming summary judgment and finding that employee's conduct was "plainly outside the scope of his employment"].)

But even if the Court of Appeal erred and there was some jury issue as to Edison's vicarious liability, that would not be a basis for Supreme Court review. Plaintiff erroneously assumes the Supreme Court is in the business of correcting every perceived error in Court of Appeal decisions. However, as the Court explained in the seminal case of *People v. Davis* (1905) 147 Cal. 346:

> "There is no abstract or inherent right in every citizen to take every case to the highest court. The district courts must be deemed competent to the task of correctly ascertaining the facts from the records before them in each case decided therein, and they should be held solely responsible to that extent for their judgments." (*Id* at p. 349.)

The policies reflected in *People v. Davis* are codified in California Rules of Court, rule 8.500, which limits Supreme Court review to cases in which it is necessary "to secure uniformity of decision or to settle an important question of law."

There is no such necessity in this case. Not by a long shot. The Court of Appeal's decision cites the relevant authority – the very same authority plaintiff relies on in his petition – and applies it to the material undisputed facts of the case. It does not conflict with other decisions; it explains why the facts of this case differ from facts of decisions that come out the other way. And it presents no opportunity to settle an important question of law, since the general principles are well settled. The

7

application of those principles to the unique facts of this case are of no interest to anyone but the parties.

There is no basis for review. Plaintiff's other arguments, which we now discuss, are beside the point.

## II.

## THE COURT OF APPEAL DID NOT REWEIGH THE EVIDENCE.

Plaintiff repeatedly asserts that the Court of Appeal erroneously resolved factual issues that are within the province of the trier of fact. (Pet., pp. 2, 3-4.) Not so. The Court's decision could not be clearer that, while there might be factual disputes as to whether Magdaleno intended to shoot plaintiff, there is no dispute as to the facts that matter to the outcome of the appeal. The result would be the same the same "[r]egardless of whether the gun discharged accidentally (per Magdaleno) or intentionally (per the eyewitnesses)." (Slip Opinion, p. 8.)[2]

The Court of Appeal did not reweigh the evidence, and did not have to reweigh the evidence, in order to decide the appeal.

## III.

## NONPUBLICATION IS A NONISSUE.

Much of plaintiff's petition is a screed against nonpublication of Court of Appeal decisions. But if it is plaintiff's position that the Court of Appeal should have published its decision in this particular case, he waived that issue because he never requested publication when he had the chance.

---

[2] Plaintiff enumerates other purportedly disputed issues of fact, but he does not cite a single record reference to support his claim. (Pet., p. 20.) Indeed, nowhere in his petition does he provide a specific record reference to any particular testimony or exhibit.

8

(Cal. Rules of Court, rule 8.1120; *Jones v. Wagner* (2001) 90 Cal.App.4th 466, 481-482.)

If it is plaintiff's position that this Court should adopt clearer guidelines for publication of Court of Appeal decisions, his concerns already been answered. As plaintiff has belatedly discovered (see plaintiff's August 9, 2007 supplemental letter brief), this Court recently revised the rules to clarify which Court of Appeal decisions ought to be published. (Cal. Rules of Court, rule 8.1105, amended effective April 1, 2007.) This case does not meet publication standards under either the former or current rules: It does not establish a new rule of law or extend a rule of law to a set of facts significantly different from those stated in existing published opinions.

If it is plaintiff's position that litigants have a constitutional right to have all Court of Appeal decisions to be published, plaintiff waived that issue by failing to assert a constitutional challenge to the publication procedure when the Court of Appeal issued its nonpublished decision. (*In re Marriage of Christie* (1994) 28 Cal.App.4th 849, 865 [constitutional issue waived if not raised at the earliest opportunity].) Moreover, that train long ago left the station. (*Schmier v. Supreme Court* (2000) 78 Cal.App.4th 703, 710-712, review den. May 24, 2000.)

*Schmier* carefully explains that the case relied on by plaintiff, *James B. Beam Distilling Co. v. Georgia* (1991) 501 U.S. 529 [111 S.Ct. 2439, 115 L.Ed.2d 481], is inapplicable here. *James B. Beam* involved "selective prospectivity." That occurs when a court expressly overrules a decisional precedent, but applies the new rule only to the case in which the new rule is announced, returning to the old rule with respect to all other cases arising on facts predating the pronouncement of the new rule. That hasn't

9

happened in this case, nor is the nonpublication of appellate decisions a matter of selective prospectivity in general.

Plaintiff argues that Courts of Appeal in general (and this one in particular) intentionally misuse the nonpublication process to deprive litigants of their rights and insulate the results from public scrutiny and Supreme Court review. In fact, all nonpublished cases are available to the public on Court web sites and through commercial legal databases. Beyond that, the very report of which plaintiff in his August 9, 2007 letter brief asks this Court to take judicial notice – the Report of the California Supreme Court Advisory Committee on Rules for Publication of Court of Appeal Opinions – states that between 2001 and 2005, a full one-third of the cases in which this Court granted review were not certified for publication. (Report, p. 18.) In fact, review is pending in dozens of unpublished civil cases and hundreds of unpublished criminal cases. (See http://www.courtinfo.ca.gov/opinions/revpub.htm.) Plaintiff's argument is not just insulting to the Justices of the Court of Appeal, it is plain nonsense.

As a further attack on the integrity of the Court of Appeal Justices who decided this case, plaintiff claims that at oral argument, the Court did not "afford [his counsel] the opportunity to discuss and deliberate the Court's pronouncements on the[] legal pivotal issues so adversely damagingly impacting his minor client." (Pet., p. 17, fn. 3.) That's more nonsense. The Court was not obligated to inform the parties in advance how the case would be decided, but it did in fact indicate which way it was leaning during Edison's oral argument.[3] Yet when it came time for plaintiff

---

[3] From the Court of Appeal's recording of oral arguments, May 21, 2007: "[Justice speaking]: "She wasn't engaged in anything that had to do with the waste water systems operation."

to argue, his counsel chose not to do so. He simply submitted the matter on the arguments in his brief.[4]

## CONCLUSION

Review should be denied.

Dated: August 27, 2007

        Respectfully submitted,

        LAW OFFICES OF DON H. ZELL
         Don H. Zell
         Robert E. Suttle

        MICHAEL GONZALES
        DOUGLAS P. DITONTO

        GREINES, MARTIN, STEIN & RICHLAND LLP
         Robin Meadow
         Marc J. Poster

By: ____/s/ Marc J. Poster____
      Marc J. Poster

        Attorneys for Defendant and Appellant
        SOUTHERN CALIFORNIA EDISON COMPANY

---

[4] *Id.*: "[Mr. Chase]: Good morning your Honor, this is Brian Chase on behalf of respondent. May it please the Court, all I just heard by appellant was a superficial summary of what's already in the briefs, so taking the Court's admonition to not rehash the briefs, I don't have anything to add to that. Um, I will welcome any questions if there's something not in the briefs that the Court feels it needs some extra assistance with. With that I would submit if there are no questions. [¶] [Presiding Justice]: Allright, thank you very much. [¶] [Mr. Chase]: Thank you, your Honors. [¶] [Presiding Justice]: Hild v. Southern California Edison is submitted."

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 8.504(d)(1) of the California Rules of Court, I certify that the attached **ANSWER TO PETITION FOR REVIEW** is proportionately spaced and has a typeface of 13 points or more. Excluding the caption page, tables of contents and authorities, signature block and this certificate, it contains 2,954 words.

Dated: August 27, 2007

By: _____
Marc J. Poster

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

      I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 5700 Wilshire Boulevard, Suite 375, Los Angeles, California 90036.

      On **August 27, 2007**, I served the foregoing document described as **ANSWER TO PETITION FOR REVIEW** on the interested parties in this action by placing a true copy thereof enclosed in sealed envelopes addressed as follows:

Brian D. Chase, Esq.
Bisnar/Chase
1301 Dove Street, Suite 120
Newport Beach, CA 92660
Atlanta, Georgia 30326
      **Attorneys for Plaintiffs and Respondents JOSHUA HILD, et al.**

Clerk of the Los Angeles Superior Court
for the Honorable Mel Recana
111 North Hill Street
Los Angeles, California 90012-3117

Office of the Clerk
California Court of Appeal
Second Appellate District, Division Two
300 South Spring Street
Second Floor, North Tower
Los Angeles, California 90013

      I caused such envelope to be deposited in the mail at Los Angeles, California. The envelope was mailed with postage thereon fully prepaid.

      I am "readily familiar" with this firm's practice of collection and processing correspondence for mailing. It is deposited with U.S. postal service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than 1 day after date of deposit for mailing in affidavit.

      Executed on August 27, 2007, at Los Angeles, California.

      I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

                                                        _____
                                                               Rebecca E. Nieto